ISAAC N. DEERING, Assignee,

*vs.*

HARLAN P. COBB and another.

York. Opinion February 2, 1883.

*Mortgages, chattel. After-acquired property. Assignee in insolvency.*

The clause in a chattel mortgage of a stock of goods to the effect that the mortgagees while remaining in possession, may sell from the stock at retail, appropriating the proceeds to replenish the stock with new goods which are to be held subject to the mortgage, is so far valid between the parties to the mortgage, as to rest in the mortgagees the title to the goods so purchased and put into the shop in pursuance thereof.

Where the mortgagors were a firm which was subsequently dissolved, and thereafter the power to sell was exercised and the duty to re-invest was performed by one partner alone without interference by the mortgagees, the mortgagees retain a lien upon the goods so purchased.

Where the evidence of fraud is wanting, an assignee in insolvency takes only the property rights and interests of the insolvent.

*Griffith* v. *Douglass,* 73 Maine, 532, considered and distinguished.

ON REPORT on agreed statement of facts.

Trover by the assignee in insolvency of Ebenezer G. Delano, to recover the value of a stock of goods.

By the agreed statement it appears that Harlan P. Cobb and Ebenezer G. Delano were partners in trade at Saco, and on March 4, 1876, gave Sweetsir, one of the defendants, a mortgage of their stock in trade, which contained this clause, "Provided also that it shall and may be lawful for said Cobb and Delano to continue in possession of said property until the said Sweetsir shall consider it for his interest to take possession under this bill of sale, and the said Cobb and Delano are to have the right to sell from said stock at retail, the proceeds of said sales to be appropriated to the purchase of new goods, said new goods to be held under this bill of sale."

February 1, 1877, the firm of Cobb and Delano dissolved, Delano continuing the business, and September 19, 1877, he gave Cobb a mortgage of his stock and fixtures, and it contained a clause like the first mortgage above written. Delano continued the business till March 21, 1879, when Sweetsir took possession under his mortgage with the knowledge of Delano and without objection. Three days later, Cobb by arrangement with Sweetsir with the knowledge of Delano, and without his objection, took possession under his mortgage for the purpose of selling and paying over proceeds to Sweetsir. Two days after that (March 26, 1879,) Delano was adjudicated an insolvent on his own petition. The opinion states other material facts.

*R. P. Tapley*, for the plaintiff.

So far as the Sweetsir mortgage is concerned, the power of sale is given to the firm of Cobb and Delano and not to the individual members. It does not appear that the after-acquired goods were purchased to replenish the stock of Cobb and Delano nor does it appear that they were purchased with proceeds of goods sold. *Chapin* v. *Cram*, 40 Maine, 561.

Beyond this we consider it well settled law in this state, that after-acquired goods do not pass under such a mortgage.

The case of *Emerson* v. *E. and N. A. R. Co.* 67 Maine, 387, fully considers the point and clearly lays down the rule that in actions at law such mortgages do not hold after-acquired

goods. The court review the cases in this state touching the question, citing *Chapin* v. *Cram*, 40 Maine, 561, as directly determining that a mortgage of a stock of goods would not transfer to a mortgagee goods afterward purchased and put in with the stock by the mortgagor, although the mortgage had a clause containing that agreement.

The assignment by operation of law vests in the assignee the title to all property and estate of the debtor. He succeeds to the rights of creditors as well as the insolvent. *Bradshaw* v. *Klein*, 1 B. R. 542 ; *In re Metzger*, 2 B. R. 355 ; *In re Eldridge*, 4 B. R. 498.

*H. Fairfield*, for the defendants, cited : *Kittridge* v. *McLaughlin*, 33 Maine, 327 ; *Goss* v. *Coffin*, 66 Maine, 432 ; *Hersey* v. *Elliot*, 67 Maine, 527 ; *Mitchell* v. *Winslow*, 2 Story, 630 ; *Briggs* v. *Parkman*, 2 Met. 258 ; *Clarke* v. *Minot*, 4 Met. 346.

SYMONDS, J. The clauses in the two mortgages under which the defendants as mortgagees claim to hold the stock of goods in question — to the effect that the mortgagors while remaining in possession may sell from the stock at retail, appropriating the proceeds to replenish the stock with new goods which are to be held subject to the mortgage — are so far valid between the parties to the mortgage as to vest in the mortgagees the title to goods so purchased and put into the shop in pursuance thereof. *Allen* v. *Goodnow*, 71 Maine, 420 ; Jones' Chat. Mort., § 138.

This is the law in this state, at least since the decision cited, in cases to which the rule applies ; where there is a power to sell at retail, accompanied with a duty to use the proceeds of sale in buying other goods to supply the place of those sold. It cannot be said to be the uniform rule declared by the authorities, but there is a somewhat general recognition in them of the validity of such stipulations between the parties ; while at law the general rule is that so long as the mortgagors remain in possession such clauses are void against attaching creditors and subsequent purchasers. It is this latter class of cases which has been most frequently before the courts. *Jones* v. *Richardson*, 10 Met. 481, is a leading case — and similar authorities are numerous and repeatedly cited. As to the effect of this stipula-

tion reserving to the mortgagee control of the proceeds of the property sold by the mortgagor, see also, *Williams* v. *Briggs*, 11 R. I. 476, 480. In comparatively few instances has attention been directed to this precise provision. The fact that after the dissolution of the firm this power to sell was exercised, and the duty to re-invest was performed, by one of the partners alone, without interference by the mortgagees, instead of by the firm to which the power was originally given, has no tendency to discharge the lien upon the goods, to the purchase of which the proceeds of the original stock were so applied.

Under each of these mortgages, the mortgagees had the right to take possession at will. They had in fact exercised this right and taken possession before the insolvency of the mortgagor. At that date without fraud they were in possession, under mortgages which had the legal effect to transfer to them, as against the mortgagor, the title to the property, the original stock and the substitutions by purchase with the proceeds. When it is considered that in the absence of fraud the assignee in insolvency takes only the property, rights and interests of the insolvent, it follows that under such circumstances the title of the mortgagees was not defeated, in the interest of the creditors generally, when the mortgagor was adjudged insolvent. There was neither actual fraud nor constructive fraud against the rights of creditors under the provisions of the act of insolvency. The mortgage debts are not denied. The mortgages were given in 1876 and 1877 ; the insolvency was in 1879. The assignee took only the title of the insolvent, against whom the mortgagees held by superior title, so far as that class of goods which we are considering is concerned.

It seems, also, that when as in this case, a mortgage is effective between the parties as a transfer of title to property to be subsequently acquired by the use of the proceeds of the original stock, and the mortgage contains a power to the mortgagee to enter and take possession of such future property when acquired, possession taken and retained in the exercise of that power makes the mortgage effective, without any new act

of the mortgagor, against third persons claiming under him by later attachment or conveyance.

A proposition at least as strong as this is sustained in Jones' Chat. Mort., §§ 160, 167, by a full citation of authorities, English and American, which there is no occasion here to examine more minutely. *Hope* v. *Hayley*, 5 El. and Bl. 830; *Moody* v. *Wright*, 13 Met. 17, 32; *Cook* v. *Corthell*, 11 R. I. 483; *Walker* v. *Vaughn*, 33 Conn. 577, 583.

But in a more recent case in Massachusetts, which has been one of the states to hold most closely to common law doctrines in regard to mortgages of this kind, it has been held that "if the after-acquired property is taken by the mortgagee into his possession before the intervention of any rights of third persons, he holds it under a valid lien by the operation of the provision of the mortgage in regard to it. . . . Such taking of possession, though effected immediately before insolvency proceedings were instituted, and with full knowledge of the insolvency of the mortgagor, would not be the acceptance of a preference, but the assertion of a right which had been previously acquired by the mortgagee under an instrument in writing made when the parties to it were both competent to contract, and when there was no qualification of the right of either to deal with the other." *Chase* v. *Denny*, 130 Mass. 566. The facts of that case resemble very closely those in the case at bar in material points.

The present case may be easily distinguished in almost all essential particulars from *Griffith* v. *Douglass*, 73 Maine, 532. There was no power of sale with the duty to invest the proceeds for the benefit of the mortgagee. It was a mortgage of the furniture "now owned or to be owned" by the mortgagor, without limitation to articles procured by the re-investment of the proceeds of an original stock authorized to be sold. The questions in that case, too, arose between the mortgagee and the attaching creditors of the mortgagor, not as here between the parties to the mortgage or their representatives; and lastly, in *Griffith* v. *Douglass*, the mortgagee, having accepted a formal delivery of the after-acquired property at the time of its

purchase, allowed it to remain in the possession of the mortgagor where it was attached by his creditors.

Whether under such a mortgage as that, and between those parties, possession of the after-purchased property taken and retained by the mortgagee in pursuance of an authority given by the mortgage would or would not have given the mortgagee superior title by force of the mortgage itself, is a question not decided by that case, nor is it here presented for decision. Not only in regard to the possession of the property, but also in regard to the parties and to the terms of the mortgage, the facts of this case are more favorable to the claim of the mortgagees, than they were in *Griffith* v. *Douglass.*

These mortgages convey the original stock and the replenishings made by the use of proceeds derived from sales. They do not purport to convey anything more. Under the stipulations of the report a nonsuit cannot be entered, for the statement that the purchases since the date of the mortgages have been "in the ordinary way of trade" might include additions procured by other means than the investment of such proceeds. At the date of the demand by the messenger, Cobb was in possession by arrangement with Sweetsir acting for him as well as for himself. There is no want of evidence of conversion of any property to which the mortgagees did not have title. A default must therefore be entered entitling the plaintiff to nominal damages at least. At the hearing for the assessment of damages the plaintiff will be entitled to recover the value of all goods in the shop at the time of the demand, which were not parts of the stock at the date of one or the other mortgage, nor purchased by proceeds of sales, according to the terms of either.

*Judgment for plaintiff. Assessment of damages at nisi prius.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and PETERS, JJ., concurred.