DANIEL ALLEN and another *vs.* FREEMAN F. GOODNOW and another.

Androscoggin.    Opinion November 11, 1880.

*Chattel mortgage, with privilege to mortgager to sell and with proceeds to purchase goods to replace. Estoppel.*

The defendants executed and delivered to the plaintiffs a chattel mortgage of a furniture store, stock in trade, &c., " with the right and privilege of selling the furniture and stock in trade now in said store and with the proceeds to buy other furniture and stock and so on forever, all of which shall be subject to this lien. And it is hereby agreed and made a part of this instrument that said stock in trade shall not be reduced in value to a less amount, at any time, than $6500 ;" *Held,* that if the defendants sold from time to time portions of the goods embraced in the mortgage, and with the proceeds of sales purchased other goods to take their place and thereby keep up the stock in the store, as it was their duty to do, the title to the goods so purchased and put into the store as between the parties to the mortgage vested in the plaintiffs.

*Also held,* if the defendants by words or conduct willfully caused the plaintiffs to believe that the defendants used the proceeds of sales of goods covered by the mortgage in the purchase of other goods to keep up the stock, as they had agreed, and thereby induced the plaintiffs to act upon that belief, so as to alter their previous position, or omit to assert some right which they otherwise would have asserted, — for instance, to take possession as they had the right to do before the stock was so greatly reduced, — the defendants would be estopped from saying that the additions to the stock, after the mortgage was given, were purchased on credit and not with such proceeds of sales.

ON REPORT.

Replevin of a stock of furniture in a store on Lisbon street, Lewiston. The plaintiffs claimed under a chattel mortgage, the material portions of which are given in the opinion. The defendants did not deny the plaintiffs' title to a portion of the goods replevied, but claimed that since the execution of the mortgage, they had purchased on credit, and not with the proceeds of any portion of the goods mortgaged, other goods, which at the time of the trial had not been paid for, and that such goods purchased on credit and not yet paid for, could not be held under the mortgage, and were improperly included in the replevin writ. Plea was the general issue, with brief statement claiming title to a portion of the goods replevied.

Plaintiffs offered to prove that they were led by defendants to believe that the stock in the furniture store at the time of replevying the same was the stock covered by mortgage, that plaintiffs had no knowledge of purchases of furniture by defendants upon credit; that no notice had ever been given by defendants to plaintiffs that they claimed the stock or any part of it until this case was opened for trial; that no articles at any time were pointed out by defendants as owned by them or any other person until this case was opened to the jury, and until that time no statement or schedule of goods claimed by defendants or any person besides them was made known to the plaintiffs; that plaintiffs had no knowledge until service of replevin writ, September 12, 1876, that the stock had been reduced in value below $6,500; that defendants had always represented to them that the stock was kept up to value of $6,500, but in fact, on the day of service of replevin writ, September 12, 1876, the value of the stock was only $4,400; that the furniture and stock replevied was put into the store in the ordinary way for sale, and that the defendants put into the stock the articles after the date of the mortgage up to time of replevin for the purpose of keeping up the stock in trade, and that plaintiffs had relied upon the facts offered; that the value of the stock at time of sale from plaintiffs to defendants, November 15, 1875, was $7,822, and September 12, 1876, at time of replevying, there was due on the mortgage about $3,700, and that note of $500 falling due

August 17, 1876, had not been paid, and that there was a breach of the conditions of the mortgage.

The presiding judge was of the opinion that goods purchased on credit after the execution of the mortgage and still unpaid for, would not be covered by the mortgage, and could not be held thereunder in this action by the plaintiffs against defendants, who claim title to them, and that the defendants could not be precluded by the mortgage and facts offered to be proved from showing that the goods claimed by them were not covered by the mortgage. Thereupon a verdict was taken, *pro forma*, that defendants did not take the goods shown to have been purchased upon credit by defendants after the execution of the mortgage, and still remaining unpaid for, comprising about two hundred articles of the value of about $2,000, and that defendants did take the remaining articles named in the officer's return of the value of about $2,300; and it was agreed that the case should be reported to the full court. If in the opinion of the full court the facts proved and offered to be proved by the plaintiffs, do not show claim to secure their debt upon the whole stock replevied, then judgment to be entered on the verdict; otherwise new trial granted.

*M. T. Ludden,* for the plaintiffs, cited : *Sylvester* v. *Staples,* 44 Maine, 496; *Braman* v. *Dowse,* 12 Cush. 227; *Hooker* v. *Hubbard,* 97 Mass. 175; 1 Greenl. Ev. § 22; *White Mountain Bank* v. *West,* 46 Maine, 15; *Tapfield* v. *Hillman,* 46 E. C. L. 245; *Morrill* v. *Noyes,* 56 Maine, 458; *Rowan* v. *M'f'g. Co.* 29 Conn. 328; *Holly* v. *Brown,* 14 Conn. 255; *Walker* v. *Vaughn,* 33 Conn. 583; *Abbott* v. *Goodwin,* 20 Maine, 408; *Noon* v. *Salisbury Mills,* 3 Allen, 340.

*Frye, Cotton & White,* for the defendants.

The cases of *Tapfield* v. *Hillman* and the Connecticut cases cited by counsel hold the opposite rule to that laid down and settled in this State in *Morrill* v. *Noyes,* 56 Maine, 458. Counsel cited : *Burnard* v. *Eaton,* 2 Cush. 294; *Moody* v. *Wright,* 13 Met. 17; *Jones* v. *Richardson,* 10 Met. 481; *Chapin* v. *Cram,* 40 Maine, 561; *McCaffrey* v. *Woodin,* 67 N. Y. 459,

(22 Am. 644); *Williams* v. *Briggs*, 11 R. I. 176, (22 Am. 653); *Cook* v. *Corthell*, 11 R. I. 482, (23 Am. 518).

The doctrine of estoppel does not apply to this case because it does not appear from the evidence offered that the plaintiffs acted or omitted to act upon the belief which they offered to prove. It is only upon the evidence offered not the conclusions therefrom that plaintiffs must rely. It is to be noticed plaintiffs offered to prove that the defendants had always represented to them, the stock was kept up to the value of $6,500. But they do not offer to prove that the defendants represented they were not purchasing on credit.

LIBBEY, J. The plaintiffs claim the property replevied by mortgage from the defendants to them, dated November 15, 1875. The defendants claim a portion of the property, on the ground that it is not embraced in the mortgage. The clauses in the mortgage to be considered in determining the rights of the parties are as follows : It conveys "the building and appurtenances owned and occupied by us as a furniture store  .   .   .   being the same lately owned and occupied by said Allen & Maxwell ; and all the stock in trade, fixtures and property of every name and nature now in said store, with the right and privilege of selling the furniture and stock in trade now in said store, and with the proceeds to buy other furniture and stock, and so on forever, all of which shall be subject to this lien. And it is hereby agreed and made a part of this instrument that said stock in trade shall not be reduced in value to a less amount, at any time, than $6,500."

.   .   .   . "Provided also that if the said stock shall at any time be reduced in value to a less amount than $6,500, the said Allen & Maxwell may enter and take possession of the same without notice. Provided also, that it shall and may be lawful for said Freeman F. and Frank" (the defendants) " to continue in possession of said property, without denial or interruption by said Allen & Maxwell, until condition broken."

The case as presented to us raises two questions which it is necessary to decide to determine the rights of the parties.

1. If the defendants, from time to time, in their business, sold portions of the goods on hand when the mortgage was given,

and with the proceeds purchased other goods, to take their place so that the value of the stock should not be reduced below $6,500, as they agreed to do; was the title to the goods thus purchased and put into the store vested in the plaintiffs by the mortgage?

2. If the goods claimed by the defendants were not purchased with the proceeds of goods sold, but by them on credit, are they estopped by the facts not controverted, and those which the plaintiffs offered to prove, from setting up that fact in defence?

In determining the first question it is unnecessary to consider the much controverted question, upon which there is so much disagreement among the courts, whether in a mortgage of all the goods then in a certain store, and all that the mortgagor might afterwards purchase and put into it, the title to goods afterwards purchased and put into the store would pass by the mortgage. It was fully considered by this court in *Morrill* v. *Noyes*, 56 Maine, 466, and settled in the negative. But in the case before us a different question is presented. It is not a question of title between the mortgagees and an attaching creditor or subsequent purchaser for value, but between the parties to the mortgage, and it must depend upon the conditions and stipulations contained in the mortgage. By these conditions and stipulations the defendants had the right to sell, from time to time in the ordinary course of their business; but their duty to use the proceeds of sales in purchasing other goods to take the place of those sold, and to be subject to the mortgage, so that the stock at no time should be reduced in value below $6,500, was co-extensive with their right to sell. The mortgagees were not to lose their lien on the proceeds of sales, but the mortgagors agreed to use such proceeds for them in purchasing other goods to take the place of those sold, so that the security might not be lessened. By those stipulations the mortgagors were made the agents or trustees of the mortgagees, with power of sale, and charged with the duty of using the proceeds of sales for their benefit. We know no principle of law which prevents the parties from making such a contract; and if honestly executed by the mortgagors by using the proceeds of sales in purchasing other goods which were put into the store to take the place of those sold, the title to such

goods is in the mortgagees, precisely the same as if they had made the sales and purchases themselves by the consent of the mortgagors. *Abbott* v. *Goodwin*, 20 Maine, 408.

But if the defendants may deny that the goods claimed by them were purchased with the proceeds of sales and put into the store to take the place of those sold, as it was their duty to do ; and prove that they were purchased on credit, then it would seem that those goods are not embraced in the mortgage ; because it is only goods afterwards purchased by such proceeds that were to be subject to the mortgage lien.

We have seen that by the terms of the mortgage the defendants were to act as the agents or trustees of the plaintiffs, charged with the duty to use the proceeds of sales, in purchasing other goods to be subject to the mortgage. They had the proceeds of the sales made by them in their hands. They purchased the goods and put them into the stock in the store. It is a general rule in equity that, when a trustee has in his hands trust funds, charged with the duty of investing them in certain property, and he purchases the property, it shall be presumed that he purchased it with the trust funds in the performance of his duty.

But this is an action at law, and we prefer to place our decision on well established rules recognized by courts of law. When one by his words or conduct, willfully causes another to believe the existence of a certain state of facts, and induces him to act on that belief, so as to alter his own previous position, or to omit to assert some right which he otherwise would have asserted, he shall not afterwards be permitted to set up a different state of facts to the injury of him thus deceived.

We think that, from the terms of the mortgage, the facts not controverted by the defendants, and those which the plaintiffs offered to prove, the jury would be authorized to find that, for the purpose of retaining possession of the goods and selling them for their own benefit, the defendants induced the plaintiffs to believe that they were acting in good faith, as it was their duty to do, in purchasing and putting into the store, from time to time, new goods, with the proceeds of the old ; and were keep-

ing the stock up to the value required by their covenant; and thereby induced them to delay taking possession of the stock as they had a right to do, and would have done if they had known the facts, till the goods covered by the mortgage, according to the defendants' theory, were reduced in value from $7,822 to $2,400.

Under such a finding the law will not permit the defendants to set up and prove in defence, that, while they had received from sales of the goods on hand at the time the mortgage was made, more than $5000, they had not used it to buy the new goods put into the store, as it was their duty to do, but had appropriated it to their own use and bought the goods on credit so that they would not be subject to the mortgage. The law will not sustain a defence so manifestly unjust.

*Verdict set aside. New trial*<br>*granted.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and SYMONDS, JJ., concurred.