LITTLE *v*. NATIONAL BANK OF MENA.

Opinion delivered December 21, 1910.

1.  MORTGAGES—RESERVATION OF POWER TO SELL—VALIDITY.—A mortgage conveying all the lumber on hand and all the lumber which the mortgagor shall later acquire, though it provides that the mortgagor may sell such lumber on its own account in due course of trade, constitutes a valid lien upon such property against every person except subsequent purchasers and creditors acquiring a specific lien upon the property. (Page 59.)

2.  SAME—EFFECT OF MORTGAGEE TAKING POSSESSION.—If a mortgagee takes possession of the mortgaged chattels before any other right or lien attaches, his title under the mortgage is good against everybody if the mortgage was previously valid between the parties, although it would have been invalid as to subsequent purchasers or creditors acquiring specific liens because it gave the mortgagor power to sell on his own account in due course of trade. (Page 61.)

3.  CORPORATION—INSOLVENCY—PREFERENCE.—The enforcement of a mortgage lien by the mortgagee taking possession, with the consent of the mortgagor, of the property covered by the mortgage is not a preference within Kirby's Digest, § 949, prohibiting preferences among creditors of insolvent corporations. (Page 61.)

Appeal from Polk Chancery Court; *James D. Shaver*, Chancellor; affirmed.

STATEMENT BY THE COURT.

On the 20th day of November, 1908, the Mena Lumber Company, a domestic corporation, owning and operating a sawmill plant in Polk County, Arkansas, executed a mortgage to John Layson to secure the sum of $22,472.26, evidenced by a promissory note, as follows: $250 to be paid on the 1st day of

January, 1909, and $250 on the 1st day of each succeeding month until the whole sum is paid. The mortgage embraced the real estate, mills, teams, logs and lumber on hand of the Mena Lumber Company and also all the lumber it "shall hereafter acquire during the life of this mortgage, it being the intention hereby to give a mortgage covering all the lumber and material which the grantor now owns or which it shall later acquire."

The mortgage also provides that, in case of failure to pay any of the moneys when the same shall become due, the whole indebtedness shall become due, and the mortgagee shall have power to sell the property. The mortgage provided that the mortgagor should keep the property free from all statutory or other liens, and that the stock of lumber should not be reduced below one million feet. The mortgagor was permitted to retain the property and buy and sell the lumber in the usual course of business; but its accounts were required to be kept with the National Bank of Mena. All receipts of the mortgagor were required to be kept with, and all disbursements to be paid out through, said bank. The mortgage was duly acknowledged and filed for record on the 21st day of November, 1908.

It was agreed that this mortgage and the note secured by it should be transferred to the National Bank of Mena to secure the amount due the bank by the Mena Lumber Company, T. W. Clark and John Layson, which at the time amounted to $9,500; and the transfer was made on the day the mortgage was executed.

Clark and Layson had been partners in the lumber business, and Layson sold his interest to Clark, and Clark then sold the whole business to the Mena Lumber Company; and the note for which the mortgage in question was given to secure was executed in payment therefor. Clark was president of the Mena Lumber Company, and also signed the note which the mortgage secured.

The Mena Lumber Company continued in possession of the property, and paid the mortgage debt as it fell due until June, 1909, at which time it made default in the payment thereof. By the terms of the mortgage the whole indebtedness became due, and by agreement between the mortgagor and the National

Bank of Mena the latter took possession of the mortgaged property under the mortgage to pay the mortgage indebtedness on the 17th day of June, 1909.

On the 3d day of July, 1909, a receiver was appointed by the chancery court to take charge of the assets of the said Mena Lumber Company on the ground of its insolvency. The receiver then took possession of the mortgaged property. In the proceedings instituted to wind up the affairs of the Mena Lumber Company as an insolvent corporation, the appellee, National Bank of Mena, intervened, claiming that it was entitled to the mortgaged property or the proceeds thereof under the mortgage transferred to it.

Appellant, D. E. Little, also intervened. He was a creditor of the Mena Lumber Company, and denied the right of appellee to the property embraced in the mortgage. The intervention of appellee was filed on July 16, 1909, and that of appellant, on August 12, 1909. Reference will be made to such other facts as may be necessary in the opinion.

The chancellor found in favor of appellee, and a decree in its favor was accordingly entered. To reverse that decree this appeal is prosecuted.

*J. I. Alley* and *E. J. Lundy,* for appellant.

*Wright Prickett,* for appellee.

HART, J., (after stating the facts). In the case of *Morton v. Williamson,* 72 Ark. 390, it was held (quoting from syllabus): "A mortgage embracing 'all the lumber and logs now on the ground, and all that may be put on the ground and sawed by us until final settlement of our account' with the mortgagees, being recorded, created a lien on any lumber subsequently manufactured at the mortgagor's mill, though not in existence when the mortgage was executed, until the mortgagees' account was fully settled."

In that case the contention was between the mortgagees and subsequent purchasers of the mortgagors as to which was entitled to the mortgaged property. The court held in favor of the mortgagees because, by the terms of the mortgage, the mortgagor was allowed to sell the lumber as the agent of the mortgagees, and not on his own account. As to the property

embraced in the mortgage, which was not intended to be sold, such as the real estate, sawmill, fixtures, teams, etc., there can be no question but that the mortgage is valid. *Morton* v. *Williamson, supra; Lund* v. *Fletcher,* 39 Ark. 325.

But it is insisted by counsel for appellant that appellee's claim to the lumber under the mortgage can not be maintained, and to sustain their contention they rely upon the case of *Lund* v. *Fletcher, supra.* They insist that because the mortgagor under the terms of the mortgage sold the lumber in due course of trade on its sole account, and not as agent of the mortgagee, the mortgage is void, and that appellant acquired no rights under it. They also contend that the taking possession of the lumber constituted a preference within the meaning of our statutes in regard to insolvent corporations, and should be set aside under section 951 of Kirby's Digest.

There was, under the facts disclosed by the record, no actual fraud in connection with the execution of the mortgage, nor is any fraud shown with reference to the subsequent conduct of the parties. Constructive fraud is relied upon, arising from the fact that by the terms of the mortgage the mortgagor was allowed to sell the lumber in due course of trade on his own account, and not as agent of the mortgagee. There are two lines of decisions upon this question—one holding that the mortgage is absolutely void, and that no subsequent act of the parties can impart any validity to it, and the other holding that the mortgage is valid between the parties, but invalid as to subsequent purchasers, attaching or execution creditors or others acquiring specific liens upon the property. See case notes to 25 L. R. A. (N. S.), p. 110 and 145, and 17 L. R. A. (N. S.), p. 937. In the case of *Lund* v. *Fletcher, supra,* our court held that in such case the mortgage "was invalid, save between the parties, on account of the power left in the mortgagor to sell in ordinary course of business." It necessarily follows that, if the mortgage is valid between the parties, it constitutes a lien upon the property against every person except subsequent purchasers and creditors acquiring a specific lien upon the property; and such is the effect of the decision in the case of *Lund* v. *Fletcher, supra,* and other similar cases in this State.

This view is strengthened by the decisions of our court,

which held that if a mortgagee takes possession of the mort-
gaged chattels before any other right or lien attaches his title
under the mortgage is good against everybody, if it was pre-
viously valid between the parties, although it be not acknowl-
edged or recorded. *Garner* v. *Wright*, 52 Ark. 385; *Applewhite*
v. *Harrell Mill Co.*, 49 Ark. 279; *Martin* v. *Ogden*, 41 Ark. 186.

The facts show that the mortgaged property was taken
into possession on the 17th day of June by appellee by agree-
ment between all parties interested in the mortgage. The re-
ceiver was appointed on July 3, and the intervention of appellant
was filed on the 12th day of August following. So, if the taking
possession of the mortgaged property constituted a preference,
the application to set it aside was made in apt time. Kirby's
Digest, § § 949-951.

The remaining question is, did the taking possession of
the mortgaged property constitute a preference?

In Jones on Chattel Mortgages (5 ed.), § 178, the author
says: "If a mortgagee takes possession of the mortgaged chat-
tels before any other right or lien attaches, his title under the
mortgage is good against everybody, if it was previously valid
between the parties, although it be not acknowledged and re-
corded, or the record be ineffectual by reason of any irregularity.
The subsequent delivery cures all such defects, and it also cures
any defect there may be through an insufficient description of
the property. The taking of possession is an identification and
appropriation of the specific property to the mortgage. * * *
Delivery of possession under a mortgage before rights have
been acquired by others will cure any invalidity there may be
in the instrument, whether arising from an insufficient descrip-
tion of the property, an insufficient execution of the instrument,
the omission to record it, or from its containing a provision
which makes it void except between the parties; as, for instance,
an agreement that the mortgagor may retain possession and sell
a stock of goods in the usual course of trade."

"If the after-acquired property is taken by the mortgagee
into his possession before the intervention of any rights of third
persons, he holds it under a valid lien by the operation of the
provision of the mortgage in regard to it. * * * Such taking
of possession, though effected immediately before insolvency

proceedings were instituted and with full knowledge of the insolvency of the mortgagor, would not be an acceptance of a preference, but the assertion of a right which had been previously acquired by the mortgagee under an instrument in writing made when the parties to it were both competent to contract, and when there was no qualification of the right of either to deal with the other." *Chase* v. *Denny,* 130 Mass. 566; *Deering* v. *Cobb,* 43 Am. Rep. 596, 74 Me. 332; *McLoud* v. *Wakefield,* 70 Vt. 558, 43 Atl. 179; *Peabody* v. *Landon,* 61 Vt. 318, 15 Am. St. Rep. 903; Re *Rogers,* 132 Fed. 560; *Fisher* v. *Zollinger,* 79 C. C. A. 76, 149 Fed. 54. See also *Martin* v. *Holloway,* 25 L. R. A. (N. S.), p. 110, and case note.

The Supreme Court of the United States held: "The enforcement of a lien by the mortgagee taking possession, with the consent of the mortgagor, of after-acquired property covered by a valid mortgage, made and recorded prior to the passage of the act, is not a conveyance or transfer under the bankrupt act; and, where it does not appear that it was done to hinder, delay or defraud creditors, it does not constitute a preference under the act, although at the time of the enforcement the mortgagee may have known that the mortgagor was insolvent and considering going into bankruptcy and the petition was filed within four months thereafter." *Thompson* v. *Fairbanks,* 196 U. S. 516. The court said:

"So in this case, although there was no actual existing lien upon this after-acquired property until the taking of possession, yet there was a positive agreement, as contained in the mortgage and existing of record, under which the inchoate lien might be asserted and enforced, and, when enforced by the taking of possession, that possession, under the facts of this case, related back to the time of the execution of the mortgage of April, 1891, as it was only by virtue of that mortgage that possession could be taken. The Supreme Court of Vermont has held that such a mortgage gives an existing lien by contract which may be enforced by the actual taking of possession, and such lien can only be avoided by an execution or attachment creditor whose lien actually attaches before the taking of possession by the mortgagee. Although this after-acquired property was subject to the lien of an attaching or an execution

creditor, if perfected before the mortgagee took possession under his mortgage, yet, if there were no such creditor, the enforcement of the lien by taking possession would be legal, even if within the four months provided in the act. There is a distinction between the bald creation of a lien within the four months and the enforcement of one provided for in a mortgage executed years before the passage of the act, by virtue of which mortgage, and because of the condition broken, the title to the property becomes vested in the mortgagee, and the subsequent taking possession becomes valid, except as above stated. A trustee in bankruptcy does not in such circumstances occupy the same position as a creditor buying under an execution or by attachment, and his rights, in this exceptional case, and for the reasons just indicted, are somewhat different from what they are generally stated." *Thompson* v. *Fairbanks, supra.*

The mortgage in this case was valid between the parties. The mortgagee made a valid transfer of it to appellee. The mortgagor made default, and, under the terms of the mortgage, the property was turned over to appellee. We think that it follows from the principles announced from the authorities *supra* that the delivery of the property gave effect to the assigned mortgage as to the after-acquired property; and that, under the facts of this case, no preference was obtained under our statutes relating to insolvent corporations.

The decree will therefore be affirmed.