Argued March 22, affirmed April 30, modified on petition for rehearing May 28, 1918.

## KENNEY v. HURLBURT.*

(172 Pac. 490; 173 Pac. 158.)

**Chattel Mortgages—Validity.**

1. Where the lender to the purchaser of a stock of goods made the loan in good faith and took a chattel mortgage on the stock as security, believing that the mortgage was security, and such mortgage was not given for the benefit of the purchaser of the stock of goods, the proceeds of any sales to be paid to the mortgagee or used in purchase of new stock to come under the mortgage and to replace that sold at the inception of the transaction, the mortgage was valid as between the lender and the purchaser.

---

*As to chattel mortgage on after-acquired property, see note in 1 L. R. A. (N. S.) 451.                                    REPORTER.

Chattel Mortgages—Future-acquired Personalty—Fluctuating Stock—
   Validity.

2.   A chattel mortgage upon future-acquired personal property or
a fluctuating stock of goods is valid as between mortgagor and mort-
gagee.

   [As to chattel mortgage on stock of mercantile goods as cover-
   ing additions thereto, see note in Ann. Cas. 1916D, 1215.]

Chattel Mortgages—Future-acquired Personalty—Fluctuating Stock—
   Perfection of Lien.

3.   Though a chattel mortgage, executed in good faith by the pur-
chaser of a stock of goods to the person who lent him money to en-
able him to make the purchase was invalid as against the creditors of
the purchaser, it being upon a fluctuating stock of goods, the lender's
mortgage lien was perfected when he was put in possession of the
merchandise by the purchaser, the mortgage operating as an executory
agreement which subjected after-acquired goods to the mortgagee's
lien on his taking possession before the rights of third persons
intervened.

Chattel Mortgages—Future-acquired Personalty—Fluctuating Stock—
   Subjection to Lien.

4.   Mere existence of claims of creditors of the mortgagor, without
attachment or seizure upon execution, was not an intervention of the
rights of third persons, preventing subjection of after-acquired goods
to the lien of a chattel mortgage on the mortgagee's taking possession
before the rights of third persons intervened.

Chattel Mortgages—Future-acquired Personalty—Fluctuating Stock—
   Rights of Mortgagee.

5.   Where money was lent to enable the borrower to purchase a
stock of goods, and the lender took a chattel mortgage on the fluctu-
ating stock, authorizing him, in case of default, to take possession of
the goods and sell them at private sale without notice to pay the
borrower's note, the fact that the lender, when he took possession
under the stipulation and was proceeding in good faith to sell the
property, was not unmindful of the claims of unsecured creditors and
offered and proposed to get all he could out of the property for them,
did not lessen nor defeat his security.

## ON PETITION FOR REHEARING.

Chattel Mortgages—Foreclosure—Assignment of Accounts to Mort-
   gagee.

6.   Where accounts payable to mortgagor are assigned to mortgagee
as collateral security for note secured by mortgage, the accounts will
not be given an estimated value in reducing balance due on note, but
actual amount realized on accounts will be added to proceeds of sale
of mortgaged property for satisfaction of balance due on note and
costs of foreclosure, surplus to go to mortgagor.

Chattel Mortgages—Foreclosure—Accounts—Surplus.

7.   Mortgagee in such case must account to receiver of mortgagor
for balance realized thereon and for the uncollected accounts.

88 Or.—44

Multnomah: ROBERT G. MORROW, Judge.

Department 2.

This is a suit to foreclose a chattel mortgage on the fixtures and stock of goods and merchandise executed by H. J. Pulfer to plaintiff, and to enjoin the sheriff from selling the property on execution, pursuant to a judgment rendered against the Pulfer Mercantile Company, a corporation. All the defendants, except R. L. Sabin, in the several capacities in which he appears, defaulted, so that the only issues to be tried are those existing between the plaintiff Kenney and the defendant Sabin. Plaintiff holds a promissory note for $3,500 executed to him on August 10, 1914, by H. J. Pulfer, and a chattel mortgage securing the same executed on that date, covering the stock and fixtures of the business.

On May 24, 1915, while a balance of the note remained unpaid and Pulfer was in default, he, being then in possession of the property, surrendered up the personal property to the plaintiff under the chattel mortgage.

The complaint alleges the execution of the note and mortgage and the breach of the conditions thereof. Sabin's answer alleges that the Pulfer Mercantile Company, a corporation, prior to August, 1914, acquired the stock of goods and fixtures mentioned from H. J. Pulfer, and that the business of buying and selling was conducted by the corporation; that after the execution of the mortgage different creditors sold goods to the corporation which became part of the stock; that such sales were made without the knowledge of the mortgage made by Pulfer; that Sabin, as assignee, instituted an action against the company for $1,484.93, and attached the personal property. The

answer shows his appointment as receiver of the Pulfer Mercantile Company, a corporation, a bankrupt, and his election as trustee. It further avers that the chattels mentioned in the exhibits to the complaint do not comprise the list of goods in the hands of either H. J. Pulfer, or Pulfer Mercantile Company, at the time of the execution of the chattel mortgage; and that the larger portion of the goods on hand in August, 1914, were subsequently disposed of. The reply put in issue many of the allegations of the answer.

The court found that the goods when delivered to the plaintiff under his mortgage were the property of Pulfer and not of the company, and were so owned when Sabin was appointed receiver and they were attached; that afterwards, on August ——, 1915, R. L. Sabin, as such trustee, sold the remaining personal property of which he had taken possession for the sum of $2,400, so that the entire fund realized therefrom and now in the hands of defendant, Sabin, as such trustee, is the sum of $2,452.20, which is made up of the following items: Perishable property, $52.20; store fixtures, $529; and stock of merchandise, $1,871; that it was agreed in open court between the parties that this fund should be treated and considered in the hands of the trustee as the personal property itself; that on February 25, 1915, defendant Pulfer and plaintiff entered into an agreement whereby the former was to transfer to the latter from time to time certain accounts or choses in action against customers to whom goods had been sold on credit, and that as they were collected by plaintiff the proceeds thereof were to be applied in part payment of his note, pursuant to which Pulfer did transfer certain of the accounts to plaintiff; that plaintiff has realized from these accounts and choses in action and from the sale of a team of horses, harness and wagon,

the sum of $1,729.26, which should be credited on plaintiff's note as of February 25, 1915, at which time there was due on the note the sum of $3,500 principal, and $140 interest; that on February 25, 1915, after the application of this sum so realized there remained due and unpaid on the note the sum of $1,910.74, no part of which has been paid. The Circuit Court decreed that plaintiff's chattel mortgage be foreclosed as a first lien upon the goods to satisfy the balance, $1,910.74, with interest at eight per cent per annum from February 25, 1915. The sum of $400 was allowed as attorneys' fees, and a further sum for costs of bringing suit.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Sidney Teiser* and *Messrs. Beach, Simon & Nelson,* with oral arguments by *Mr. Roscoe C. Nelson* and *Mr. Teiser.*

For respondent there was a brief over the names of *Mr. Milo C. King* and *Messrs. Malarkey, Seabrook & Dibble,* with oral arguments by *Mr. E. B. Seabrook* and *Mr. M. C. King.*

BEAN, J.—The vital question in the case is as to the ownership of the personal property at the time of the execution of plaintiff's chattel mortgage and at the time of the taking possession thereof by Kenney under the terms of such mortgage. Upon this point the rights of the plaintiff and defendant must stand or fall.

In February, 1914, H. J. Pulfer entered into the general mercantile business in the town of Gresham, purchasing of Bragg & Duncan, a retiring concern, their stock invoiced at approximately $1,900, and fixtures at about $1,200. In order to buy the property and practi-

cally as one transaction, Pulfer obtained $1,000 from his wife and negotiated a loan from plaintiff Kenney. To secure the payment of the latter loan Pulfer executed a chattel mortgage on the stock of goods and fixtures to Kenney. On August 10, 1914, Kenney loaned Pulfer an additional $1,000, taking a new mortgage on the merchandise and fixtures. The mortgage described the chattels as "that certain stock of general merchandise consisting of * * and all additions which shall hereafter be made to such stock similar in kind to those above set forth, or otherwise," and the same were located "together with all of the fixtures of every kind and nature in said buildings, being the stock and fixtures formerly owned by Messrs. Bragg & Duncan of Gresham, County of Multnomah, State of Oregon, and all additions made thereto." Then follows the provision:

"It is understood and agreed, however, that the said H. J. Pulfer shall hold and retain the possession of said chattels as the agent of G. W. Kenney of Gresham, County of Multnomah, State of Oregon, that none of the chattels shall be sold unless the said H. J. Pulfer, as the agent of said G. W. Kenney shall keep a strict account thereof and render a strict accounting thereof to the said G. W. Kenney applying all the proceeds received from said sale either in payment of the obligation secured by this instrument or in purchasing new stock to take the place of that sold, which said new stock shall thereby come under the operation of this mortgage."

The chattel mortgage was duly placed upon the records of Multnomah County. Pulfer operated the business under the name of Pulfer Mercantile Company, selling goods and purchasing others. No strict account thereof was rendered to Kenney until February, 1915, when he insisted upon being paid a portion,

and several accounts due Pulfer for goods sold were transferred to Kenney to be collected and credited on the mortgage debt. Other accounts were also turned over to him in like manner from time to time and the money realized therefrom credited on the note. On May 24, 1915, Kenney took possession of all the stock of goods and the fixtures then in the store and posted a notice of foreclosure on the store door. On February 14, 1914, H. J. Pulfer, his wife, C. B. Pulfer, and D. M. Roberts signed articles of incorporation of Pulfer Mercantile Company. H. J. Pulfer subscribed for one share of the stock thereof; Mrs. Pulfer subscribed for 98 shares and D. M. Roberts for one share, making 100 shares total capitalization. These parties held a stockholders' meeting. The papers were prepared in Portland and the minutes of a directors' meeting were written up and delivered to Pulfer with instructions that after the articles of incorporation were filed with the corporation commissioner a meeting of the directors should be held at Gresham and the minutes then utilized. It does not appear that any such meeting was afterward held. About April, 1914, it was proposed by Pulfer that Kenney would consent to turning over to the corporation the personal property mortgaged to him and that in lieu of the chattel mortgage the 98 shares of the corporate stock subscribed for by Mrs. Pulfer should be pledged to secure the payment of his note. Kenney was urged to agree to this plan and the articles of incorporation were filed in Salem and in the county clerk's office in May. The organization fee and license fee to July 1, 1914, were paid and a contract was prepared for plaintiff to sign to effect the proposal. Kenney considered the matter for a time and after consulting his banker refused to make the change. The stock of goods and fixtures was never

transferred to the corporation nor was there ever any attempt to do so or pretense that the same had been done. No change was made by Pulfer in the method of doing business. On May 29, 1915, defendant Sabin, as the representative of various creditors, procured an attachment on the stock of goods and fixtures in an action against Pulfer Mercantile Company, a corporation. Pursuant to such attachment the sheriff took possession of the personal property. A trial of the rights of the property as between Pulfer and the corporation by a sheriff's jury resulted in a verdict that the property belonged to the former and not to the latter. Defendant Sabin furnished a bond to protect the sheriff and directed a sale of the merchandise and fixtures upon execution upon the judgment. This suit was then commenced. On July 1, 1915, bankruptcy proceedings were instituted in the Federal Court against Pulfer Mercantile Company, a corporation, and Sabin was appointed receiver. Application was made to the Federal Court for leave to make said receiver and any trustee, who might afterwards be appointed, parties to this suit and the Federal Court ordered that the same might be done and that the issue of ownership of said property be determined in the state court, it having first obtained jurisdiction over the said personal property. Thereupon, Sabin, as receiver, and as trustee, was made a party defendant herein and supplemental complaints were filed against him. The property was sold and the proceeds are held in lieu thereof.

The defendant Sabin contends that the chattel mortgage of plaintiff was invalid for the reason that the stock of goods was left in the possession of the mortgagor with power of disposition thereof, under the rule followed in *Orton* v. *Orton,* 7 Or. 478, 481, 483 (33 Am.

Rep. 717); *Aiken* v. *Pascall*, 19 Or. 493 (24 Pac. 1039); and *Sabin* v. *Wilkins*, 31 Or. 450, 456, 458 (48 Pac. 425, 37 L. R. A. 465). Sabin further asserts that the property at the time of the attachment was owned by Pulfer Mercantile Company, a corporation. We find that the title to the stock of goods and fixtures at the time of the execution of plaintiff's first chattel mortgage passed from Bragg & Duncan to H. J. Pulfer and was never transferred to the corporation; and that H. J. Pulfer was the lawful owner of the property at the time of the execution of both of plaintiff's mortgages.

1. In regard to the question of the force of the mortgage it will be noticed that H. J. Pulfer was by the terms thereof not given an unqualified right to sell the goods, but only unless he should "keep a strict account," render the same to Kenney and apply the proceeds to the payment of the mortgage debt or in purchasing new stock to take the place of that sold. It must be conceded that there was no actual fraud in the transaction. Kenney loaned the money to Pulfer in good faith and took the mortgage believing that it was security. It was not given for the benefit of Pulfer in any sense of the word. Therefore, at the inception of the transaction the chattel mortgage was valid as between Kenney and Pulfer. On May 24, 1915, Kenney, the mortgagee, took complete possession of the mortgaged property with the intention of holding the same and continued in such possession until the time of the attachment. The right of Pulfer to hold possession of or to sell any of the goods ceased at that time. There was then no other lien upon the merchandise. The creditors for whom the claim is made by the receiver are strictly speaking those of Pulfer Mercantile Company, a corporation, and not of H. J. Pulfer.

2. Viewing the matter in the light most favorable to such creditors, a chattel mortgage upon future acquired personal property or a fluctuating stock of goods is valid as between the mortgagor and mortgagee: *Flanagan Bank* v. *Graham,* 42 Or. 403 (71 Pac. 137, 790); *Peterson* v. *Sabin,* 214 Fed. 234 (130 C. C. A. 608); *Morton* v. *Williamson,* 72 Ark. 390 (81 S. W. 235); *Fidelity Trust Co.* v. *Staten Island Clay Co.,* 70 N. J. Eq. 550 (67 Atl. 1078); *Galveston H. & H. R. Co.* v. *Hill Mercantile Co.,* 31 Tex. Civ. App. 196 (71 S. W. 797); *W. Hayward Export Co.* v. *Lee,* 193 Fed. 647 (113 C. C. A. 515).

3, 4. Although the chattel mortgage executed by H. J. Pulfer to plaintiff in good faith was invalid as against the creditors of the mortgagor, it being upon a fluctuating stock of goods, the lien was thereby perfected when the mortgagee Kenney was put in possession of the merchandise on May 24, by Pulfer, the mortgagor. The mortgage operated as an executory agreement which subjected the after-acquired goods to the lien of the mortgage upon the mortgagee taking possession of the goods before the rights of third persons intervened. The existence of claims of creditors without attachment or seizure upon execution was not such an intervention: 6 Cyc. 1051; *Wasserman* v. *McDonnell,* 190 Mass. 326 (76 N. E. 959); *Allen* v. *Goodnow,* 71 Me. 420; *Deering* v. *Cobb,* 74 Me. 332 (43 Am. Rep. 596); *Williamson* v. *Nealey,* 81 Me. 447 (17 Atl. 404); *Williams* v. *Noyes & Nutter Mfg. Co.,* 112 Me. 408 (92 Atl. 482, Ann. Cas. 1916D, 1224); *In re National Valve Co.,* 140 Fed. 679; *In re National Grocer Co.,* 181 Fed. 33 (30 L. R. A. (N. S.) 982, 104 C. C. A. 47); *In re Hurley,* 185 Fed. 851; *Johansen Bros. Shoe Co.* v. *Alles,* 197 Fed. 274 (116 C. C. A. 636); *In re East End Mantel & Tile Co.,* 202 Fed. 275; *People* v. *Bristol,* 35 Mich.

28; *Eddy* v. *McCall,* 71 Mich. 497 (39 N. W. 734);
*Louden* v. *Vinton,* 108 Mich. 313 (66 N. W. 222); *Little*
v. *Mena Nat. Bank,* 97 Ark. 57 (133 S. W. 166); *Burford*
v. *First Nat. Bank,* 30 Ind. App. 384 (66 N. E. 78);
*Campbell* v. *Quinton,* 4 Kan. App. 317 (45 Pac. 914);
*Petring* v. *Chrisler,* 90 Mo. 649 (3 S. W. 405); *Francisco* v. *Ryan,* 54 Ohio St. 307 (43 N. E. 1045, 56 Am.
St. Rep. 711); *Cooper* v. *Rouse,* 130 N. C. 202 (41
S. E. 98).

In *Currie* v. *Bowman,* 25 Or. 364, 381 (35 Pac. 848),
in discussing the validity of a similar mortgage Mr.
Justice Lord said:

"To avoid a mortgage or other conveyance as fraudulent and void, there must be a real design on the part
of the mortgagor, in which the mortgagee participated,
to withdraw his property from the claims of his creditors. * * A debtor has a right to secure a creditor,
and, if he does so by giving a mortgage, it is what the
law admits to be rightful, although the effect will be to
hinder other creditors, and he so intends; yet, if such
mortgage is accepted in good faith, it is not a fraudulent hindrance, because the debtor has not disposed of
his property in a way to prevent its application to the
satisfaction of his *bona fide* debt," citing *Sabin* v.
*Columbia Fuel Co.,* 25 Or. 15 (34 Pac. 692, 35 Pac. 854,
42 Am. St. Rep. 756).

In *Sabin* v. *Wilkins,* 31 Or. 450 (48 Pac. 425, 37
L. R. A. 465), Mr. Justice Wolverton said at page 457
of the opinion:

"The intent and purpose of the parties in giving and
receiving a chattel mortgage is the test of its validity
at its inception, but, as it is a thing capable of modification by subsequent agreement, either expressed or
implied, by co-operative and willful disregard of its
terms and conditions, it is a prerequisite to its continuing validity that good faith and fair dealing be
maintained toward those whose interests may be affected by it. A chattel mortgage given primarily for

the benefit of the mortgagor is void as against creditors from the beginning.''

In *Little* v. *Mena Nat. Bank,* 97 Ark. 57 (133 S. W. 166), it was held that a mortgage of a stock of lumber authorizing the mortgagor to continue sales, but requiring him to keep the stock up to a stated value, is valid between the parties and constitutes a lien on the property against every person, except subsequent purchasers and creditors acquiring a specific lien on the property. In *Allen* v. *Goodnow,* 71 Me. 420, we find that where the parties to the mortgage contract that the mortgagor may sell from the stock of goods mortgaged in the regular course of trade, replenishing the stock with new goods which shall be subject to the same lien, as between them the title to the newly acquired stock in trade vests in the mortgagee. In *In re National Valve Co.,* 140 Fed. 679, 681, affirmed in 149 Fed. 54 (79 C. C. A. 76), we find it is definitely decided that a stipulation in a chattel mortgage that it shall be a lien on any goods the mortgagor may thereafter purchase and place in stock to supply the place of those he should sell, while not creating a present lien, nor a lien when and as the goods are purchased, constitutes a valid contract for a lien on such acquired property; and that possession thereof, lawfully taken by the mortgagee, has the same effect of protecting it in his hands from the claims of the mortgagor's creditors as has possession taken of property owned by the mortgagor at the time of the execution of the mortgage: See also *Francisco* v. *Ryan,* 54 Ohio St. 307 (43 N. E. 1045, 56 Am. St. Rep. 711).

''In equity while a chattel mortgage of after-acquired property passes no title to such property, it operates to create an equitable interest in the mortgagee under the maxim that equity considers that as

done which ought to be done, the mortgage being deemed to be an executory agreement which attaches to the property when acquired.''

5 R. C. L., § 27; *Borden* v. *Croak,* 131 Ill. 68 (22 N. E. 793, 19 Am. St. Rep. 23); *Wright* v. *Bircher's Exr.,* 72 Mo. 179 (37 Am. Rep. 433); *McCaffrey* v. *Woodin,* 65 N. Y. 459 (22 Am. Rep. 644); *Akers* v. *Rowan,* 33 S. C. 451 (12 S. E. 165, 10 L. R. A. 705); *Horner-Gaylord Co.* v. *Fawcett,* 50 W. Va. 487 (40 S. E. 564, 57 L. R. A. 869); *Holroyd* v. *Marshall,* 10 H. L. Cas. 191 (33 L. J. Ch. 193, 9 Jur. (N. S.) 213, 7 L. T. (N. S.) 172, 11 W. R. 171, 10 E. R. C. 426); notes to 46 Am. Dec. 717, 76 Am. Dec. 731, 109 Am. St. Rep. 514, and 18 L. R. A. 300, et seq. In Jones on Chattel Mortgages (4 ed.), Section 178, it is stated thus in part:

''Delivery of possession under a mortgage, before rights have been acquired by others, will cure any invalidity there may be in the instrument, whether arising from an insufficient description of the property, an insufficient execution of the instrument, the omission to record it, or from its containing a provision which makes it void except as between the parties; as, for instance, an agreement that the mortgagor may retain possession and sell a stock of goods in the usual course of trade.''

We do not deem it necessary to consider what was the status of the Pulfer Mercantile Company as a corporation. Suffice it to say that if it was a corporation it never owned the property mortgaged to Kenney. The receiver Sabin is claiming a right to the property under the Pulfer Mercantile Company, a corporation, as owned by it. If the mortgage in question had been actually fraudulent in its inception a different result would have been effected. The entire cash that went into the business consisted of the original $2,500 bor-

rowed from plaintiff, the $1,000 borrowed from Mrs. Pulfer, the $1,000 borrowed from plaintiff on August 10, 1914, and the $1,000 borrowed from one Middleton in March or April, 1915, all of which was Pulfer's money for which he was individually indebted, and not the corporation. It appears that between August, 1914, and May, 1915, Pulfer paid out some $16,000 or $17,000 in the purchase of goods.

5. In view of the facts that the rulings of the state courts upon the question are not harmonious, and that there is an apparent conflict in the opinions of the lower federal courts, and further because this particular phase of the question is practically new in this state it becomes of interest to note the view of the Supreme Court of the United States as expressed in *Etheridge v. Sperry*, 139 U. S. 266 (35 L. Ed. 171, 11 Sup. Ct. Rep. 565), where a chattel mortgage executed in Iowa was under consideration. In the concluding part of the opinion Mr. Justice BREWER says:

"Indeed, if this were an open question, we could not be blind to the fact that the tendency of this commercial age is towards increased facilities in the transfer of property, and to uphold such transfers so far as they are made in good faith; and it is at least worthy of thought, whether the rulings made by the Supreme Court of Iowa do not tend to make chattel mortgages more valuable for commercial purposes, without endangering the rights of unsecured creditors. The law now generally requires a record of all such instruments, and that, like the recording of a real estate mortgage, gives notice to all parties interested of the fact and extent of encumbrances. Why should a transaction like this be condemned, if made in good faith and to secure an honest debt? The owner of a stock of goods may make an absolute sale of them to his creditor, in payment of a debt. If an absolute, why not a conditional, sale, with such conditions as he and his creditor may agree upon? As between the parties

no court would question this right, or refuse to enforce
the conditions. The interests of the general public are
not prejudiced by any such transaction between debtor
and creditor. Indeed, they are rather promoted by
any arrangement under which the mortgagor can con-
tinue in business, for in ninety-nine cases out of a hun-
dred the taking of possession by a creditor results in
closing the business, and turning the debtor out of
employment. The only parties who can claim to be
injuriously affected are unsecured creditors. But they
are notified by the record of the exact relations between
the mortgagor and mortgagee; and surely subsequent
creditors have no right to complain if they deal with
the mortgagor with full knowledge of such relations.
Existing creditors may of course challenge the good
faith of the transaction, but if they cannot disturb an
absolute sale when made in good faith, why should they
be permitted to challenge a conditional sale if made in
like good faith? The fact that fraudulent relations are
possible, is hardly a sufficient reason for denouncing
transactions which are not fraudulent.''

It is apparent that the modern trend of judicial deci-
sion is to uphold chattel mortgages upon a commercial
stock of goods taken in good faith where the instrument
is placed upon the public records. This is clearly indi-
cated by the comments of the United States Supreme
Court quoted above. The mortgagee was authorized
by the terms of the instrument, in case of default, to
take possession of the mortgaged goods ''and sell and
dispose of the same at private sale without notice'' to
pay the note. He took possession under the stipula-
tion and was proceeding in good faith to sell the prop-
erty at private sale to satisfy the debt. The fact that
he was not unmindful of the claims of the unsecured
creditors and offered and proposed to get all he could
out of the property for them would not lessen nor de-
feat his security. At the time he so took possession
there was nothing to prevent him from enforcing a lien

upon the property if he had had no mortgage. There is no good reason why he should be considered in a less favorable position by reason of taking a chattel mortgage in entire good faith to secure the money loaned to Pulfer to pay for the stock of goods. Pulfer testifies that he informed the principal creditors of the chattel mortgage. He is out of the business in any event and seems inclined to state the matter fairly. Many of the present managers of the concerns with whom he dealt have apparently not remembered the matter or never had actual cognizance thereof. The public record, however, disclosed the true state of affairs as to H. J. Pulfer. In this respect the present case differs from the facts in *Scandinavian-American Bank* v. *Sabin*, 227 Fed. 579 (142 C. C. A. 211). There is the further distinction between these cases, in so far as it appears from the opinion in *Scandinavian-American Bank* v. *Sabin, supra,* that there was no taking possession by the mortgagee in the last-named case as in the case at bar. The rights of the defendant Sabin as against the Pulfer Mercantile Company, a corporation, accrued on May 29, 1915. The claim made by the receiver on behalf of the creditors is in effect that they had a lien upon the stock of merchandise for goods sold, without any mortgage or contract providing therefor before the attachment was levied.

In *Fisher* v. *Kelly*, 30 Or. 1 (46 Pac. 146), at page 8, Mr. Justice MOORE said:

"The general creditor is in no position to raise the question that the mortgage is void as to him until he has seized the property covered by the chattel mortgage, or secured some lien thereon," citing *Union National Bank* v. *Oium*, 3 N. D. 193 (54 N. W. 1034, 44 Am. St. Rep. 533).

In the Fisher case a chattel mortgage was given by a merchant tailor on his stock of goods which he retained possession of and dealt with in the usual course of trade. The mortgagee agreed with the mortgagor, as the lower court found, that the existence of the chattel mortgage should not be made public and that no creditors of the mortgagor should be advised thereof; that they knew nothing about it until they attached the goods; that such understanding was intended to deceive creditors and hinder and defraud them. The mortgage was never filed, nor was possession thereunder ever taken by the mortgagee. It was held to be "void as to attaching creditors without reference to the issue that the mortgagees gave the mortgagor power to dispose of the goods for his own use and benefit."

Whatever may be stated as a conclusion by Mr. Kenney or anyone else in regard to the accounts transferred to him, it is clear that the same were taken by him as collateral and anything he realized therefrom was to be credited upon the Pulfer note. It is not believed that Kenney desires more than a sufficient amount to pay the debt due him. It is a very simple matter for him to account for any balance of the miscellaneous bills or other collateral, if any, that may remain after his mortgage is satisfied. This matter, therefore, need not be further considered here. There is no complaint in regard to the amount found due upon plaintiff's note. It follows that the decree of the lower court should be affirmed and it is so ordered.

AFFIRMED.

McBRIDE, C. J., HARRIS and McCAMANT, JJ., concur.

Modified May 28, 1918.

## ON PETITION FOR REHEARING.

(173 Pac. 158.)

*Mr. Sidney Teiser* and *Mr. Roscoe C. Nelson,* for the petition.

*Mr. Milo C. King* and *Messrs. Malarkey, Seabrook & Dibble, contra.*

BEAN, J.—In a petition for rehearing it is suggested that in ascertaining the balance due plaintiff Kenney, the lower court figured a credit of $300 as the estimated value for several thousand dollars in outstanding amounts transferred by H. J. Pulfer to plaintiff.

Our opinion heretofore rendered, *ante,* p. 692 (172 Pac. 490), clearly holds that such accounts were transferred to plaintiff as collateral security for the note of plaintiff, and not as an absolute sale. These accounts appear in the findings of the trial court as though the sum of $1,729.26 had been realized therefrom with the proceeds of the sale of a team of horses, wagon and harness.

6, 7. The decree of the lower court will be directed to be modified so as to provide for the payment of the balance found due upon plaintiff's note and mortgage from the proceeds of the sale of the mortgaged property, and the net amounts actually realized by plaintiff from the assigned accounts, considering such accounts as collateral security, and not estimating the value thereof. Plaintiff will be required to account to the receiver, or to whom the same may appear to belong, in the lower court for any, and all of the said

88 Or.—45

accounts, or the proceeds thereof that may remain after the satisfaction of the amount found due plaintiff upon his note and mortgage, and the costs, expenses and attorneys' fee in this suit.

Plaintiff will recover his costs in this court notwithstanding such modification. In other respects the motion for a rehearing is denied.

MODIFIED ON PETITION FOR REHEARING.