### In re PINE TREE LUMBER CO.

### BOYLE v. GOOD–HOPKINS LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. December 6, 1920.)

No. 3524.

**Bankruptcy ⬅184(1)—Chattel mortgage on lumber subsequently sawed valid against trustee.**

Under the law of Oregon a chattel mortgage given by a sawmill company and duly recorded on lumber to be thereafter sawed by the mortgagor and piled on land described *held* valid as against the trustee in bankruptcy of the mortgagor as to lumber which had been sawed and piled as designated and the piles marked with the name of the mortgagee, although the mortgagee had not taken actual possession.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

In the matter of the Pine Tree Lumber Company, bankrupt. From an order sustaining the validity of a chattel mortgage given by the bankrupt to the Good-Hopkins Lumber Company, W. R. Boyle, trustee, appeals. Affirmed.

Plowden Stott, of Portland, Or., for appellant.

Lantry & Merritt, of Spokane, Wash., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. This appeal presents the question whether a chattel mortgage given by the bankrupt, Pine Tree Lumber Company, to Good-Hopkins Lumber Company, has validity and created a lien superior to any lien of the trustee in bankruptcy of Pine Tree Lumber Company.

The trustee, while receiver of the bankrupt company, petitioned the District Court for leave to sell 1,000,000 feet of lumber, more or less, upon which Good-Hopkins Lumber Company claimed a lien. Upon a hearing the referee in bankruptcy disallowed the claim as a preferred and secured one and allowed it as a general claim, and thereafter the lumber was sold free of lien. The District Court reversed the order of the referee and allowed the claim as a preferred one, and the trustee appealed.

The claim of Good-Hopkins Lumber Company is founded upon a chattel mortgage, duly recorded, made by the bankrupt on June 20, 1918. The mortgage provides that the Pine Tree Lumber Company, in consideration of sums "to be loaned as hereinafter specified," grants, bargains, transfers, and sets over unto Good-Hopkins Lumber Company, a Washington corporation, "all of the lumber of every kind and character which shall be sawn by the mortgagor at its mill, beginning June 1, 1918, and put in pile upon a certain piling ground in the north half of the southeast quarter (N. ½ S. E. ¼) of section 17, township 17 S., range 11 E., W. M., in Deschutes county, Oregon, which piling ground is located near said mill, up to the full amount of six, million feet." Other provisions of the mortgage make it a security for all notes given during the continuance of the mortgage, and provide that if the mortgagor shall pay unto the mortgagee sums which may be secured by the mortgage in accordance with the conditions of the notes, and in any event before June 1, 1919, and shall comply with the terms of a certain contract between the parties, executed February 7, 1918, then the mortgage shall be of no effect; otherwise, to remain in full force. There are further references to advances made in accordance with the terms of the contract referred to between the parties, dated February 7, 1918.

There was testimony to the effect that the bankrupt owned by a contract of purchase the standing timber from which the lumber referred to in the chattel mortgage was sawn. About December 1, 1918, Good-Hopkins Company gave its permission for the Pine Tree Company to make a contract for sawing lumber with another company, and it appears that after that time the Pine Tree Company did nothing for the Good-Hopkins Company. On August 29, 1919, the Pine Tree Lumber Company was adjudged a bankrupt. Boyle, now

trustee, was appointed receiver, and found 1,000,000 feet of lumber, more or less, on hand. The Pine Tree Lumber Company had sawed this lumber and placed it in its lumber yards near its mill in Deschutes county. The lumber so piled never was in the actual, manual possession of Good-Hopkins Lumber Company, but was in the possession of the bankrupt corporation, and passed from its possession into the hands of the receiver on August 29, 1919, and was retained by the receiver until sold pursuant to an order of court. It also appeared that the money loaned, and which the mortgage was given to secure, was all used in the production of the lumber covered by the mortgage, and all the lumber covered by the mortgage was produced and put in piles prior to December 1, 1918, and each pile was stenciled "Good-Hopkins Lumber Company."

It is conceded that rights of the parties are to be determined under the law of Oregon. So far as the record advises us, no attaching creditor appears to have filed a claim or to have held an attachment lien. The rights of the trustee as defined under the amendment of 1910 (Act June 25, 1910, c. 412, 36 Stat. 840 [U. S. Comp. Stat. Supp. 1911, p. 1500]) to section 47a of the Bankruptcy Act are:

"(2) Collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estate as expeditiously as is compatible with the best interests of the parties in interest; and such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon." In re Flatland, et ux, 196 Fed. 310, 116 C. C. A. 130.

In equity the mortgage is valid as against the mortgagor and all persons claiming through him with notice, and we think it is valid in the adjustment of the rights in bankruptcy, even though the mortgagee did not take actual, manual possession of the property. The effect of the mortgage was to operate as a contract to assign as soon as the mortgagor acquired the property, and thus there was created a lien capable of enforcement in equity as a lien attaching to the property. The lumber was all sawed and put in piles several months before the date of the appointment of the trustee, and a circumstance in favor of the validity of the mortgage is the fact that after the production of the lumber the mortgagor marked and numbered each pile with the name of the mortgagee, appellee herein. In Coates v. Smith, 81 Or. 556, 160 Pac. 517, the Supreme Court of the state assumed that the rights of a trustee are equal to those of an attaching creditor under the statutes of Oregon, and held that it was the settled law of that state:

"That a trustee having the right of an attaching creditor, is not ipso facto a bona fide purchaser for value. That one is such a purchaser and not affected by outstanding equities is an affirmative defense, and must be pleaded and proved. Before an attaching creditor, or one standing in an equal position, can be deemed a purchaser in good faith, he must allege and prove all the facts necessary to establish that character of his ownership."

In support of this rule many earlier Oregon decisions are cited.

In the earlier case of Flanigan v. Graham, 42 Or. 403, 71 Pac. 137, 790 (decided in 1903), the court, speaking through Justice Wolverton,

recognized that the general principle that a mortgage intended to cover property not in existence or after-acquired seems to be that at law such a mortgage is ineffectual and void, but that in equity it is regarded as an executory agreement which, though not effectual per se to transfer the present legal title, yet operates to impress a lien according to the agreement of the parties when the property comes into existence. The court continued:

"The instrument called a 'mortgage,' under such conditions, is construed as operating by way of a present contract to give a lien, which, as between the parties and all others having notice or knowledge thereof, takes effect or attaches to the subject as soon as it comes into the ownership of the mortgaging party."

The doctrine of the case is approved in Jones on Chattel Mortgages, § 170.

Kenny v. Hurlburt, 88 Or. 688, 172 Pac. 490, 173 Pac. 158, L. R. A. 1918E, 652, Ann. Cas. 1918E, 737, is relied upon by the appellant as supporting the proposition that, actual possession not having passed to the mortgagee, the mortgage is invalid. That case arose between a trustee in bankruptcy and the holder of a chattel mortgage covering a stock of goods in a retail mercantile house. The trustee was appointed in the bankruptcy of Pulfer Mercantile Company. Upon the facts it was found that one Pulfer was the owner at the time of the execution of the mortgage, and the court held that the trustee had no standing in court and that the mortgage held by the plaintiff was not enforceable. In the course of the opinion the court said that a chattel mortgage upon future-acquired personal property or a fluctuating stock of goods was valid as between mortgagor and mortgagee, citing Flanigan Bank v. Graham, already referred to, and that, while the chattel mortgage made by Pulfer to Kenny in good faith was invalid as against the creditors of the mortgagor, for the reason that it was on a fluctuating stock of goods, nevertheless, the lien was perfected when the mortgagee, Kenny, was put in possession of the merchandise by the mortgagor. The court said:

"The mortgage operated as an executory agreement, which subjected the after-acquired goods to the lien of the mortgage upon the mortgagee taking possession of the goods before the rights of third persons intervening. The existence of claims of creditors without attachment or seizure upon execution was not such an intervention."

Appellant argues that it should be deduced from the opinion just cited that such a mortgage as that described in the instant case is invalid as against all persons except the mortgagor and the mortgagee, who took possession. But we think the cases are distinguishable. There is a difference between a stock of retail merchandise left in the possession of the mortgagor in his store being sold in the usual course of business, and lumber piled in piles on a described piece of ground and marked with the name of the mortgagee, and removed from the control of the mortgagor, except to deliver to the carrier for transport to the mortgagee. The learned District Judge in his opinion commented upon Kenny v. Pulfer, supra, and said:

"The general question as to the validity of such a mortgage was, however, not before the court or necessary to a decision of the case in hand, and I do not think the court intended to lay down any general rule on the subject. It was dealing with a mortgage on a stock of merchandise left in the possession of the mortgagor with authority to sell and replenish in the usual course of business. There were no visible means by which the purchaser or attaching creditor could distinguish the goods acquired after the execution of the mortgage from those on hand at the time. No such case is here presented. Here the lumber, as fast as sawed, was piled and kept separate and apart from other lumber and marked with the name of the mortgagee. There was no difficulty for an intending purchaser or attaching creditor to identify the actual property claimed under the mortgage and there was sufficient, in my judgment, to impart notice and knowledge to anyone dealing with the property and to render the mortgage valid."

In the case of First National Bank v. Wegener, 94 Or. 318, 181 Pac. 990, 186 Pac. 41, it was held that it is not necessary for a mortgagee to take possession of lumber covered by a mortgage. Taking possession would give no greater protection than that given by recording the mortgage in accordance with the statute of the state. Of course, possession by a mortgagee is held to be essential to give notice where the mortgage has not been recorded, in order that the holder of the mortgage may be put in as strong a position as he would occupy were his security put upon the record.

The contention that the property was not sufficiently well described in the mortgage cannot be sustained. It would have been very simple to identify the property. Sommer v. Island Mercantile Co., 24 Or. 214, 33 Pac. 559; Elwert v. Hansen, 89 Or. 399, 173 Pac. 939.

Parol evidence may be resorted to to apply the description to the subject-matter intended to be embraced in the mortgage, but not to contradict its terms, nor to bring within its operation property not fairly included within the mortgage. It is well established that evidence may be introduced to show that the mortgagor was in fact the owner of the property at the time of the mortgage. Jones on Chattel Mortgages, § 53.

Holding that the order of the District Court allowing the claim of the petitioner creditor was correct, the decree is affirmed, with costs in favor of appellee.

Affirmed.