Argued at Pendleton May 4; affirmed July 14; rehearing denied
September 22, 1942

# TURNER *v.* DOBSON ET AL.

(127 P. (2d) 746)

Before KELLY, Chief Justice, and BAILEY, LUSK,
RAND, and BRAND, Associate Justices.

*P. J. Gallagher*, of Ontario (Gallagher & Gallagher, of Ontario, on the brief), for appellant.

*Charles W. Swan*, of Vale (Lytle & Swan, of Vale, on the brief), for respondents.

LUSK, J. This appeal presents the question of the validity as to subsequent creditors of a chattel mortgage on a fluctuating stock of goods. The complaint attacking the mortgage was filed by the assignee of such creditors. A demurrer to the complaint was sustained by the court below, and, the plaintiff refusing to amend, a decree of dismissal was entered. We are to determine, therefore, whether the complaint states facts sufficient to constitute a cause of suit.

The following facts appear from the complaint and the exhibits thereto attached.

On September 25, 1939, the defendants Dobson and wife executed a mortgage to the defendants Minster and wife, covering the goods, wares and merchandise, and supplies constituting the stock and business of the N. P. Minster Hardware Co. of Ontario, Oregon, and the furniture, fixtures and equipment of said business, as well as goods, wares and merchandise, etc., thereafter acquired and added to the business

during the existence of the mortgage. The mortgage was given to secure payment of two promissory notes, one for $295.00, payable in ninety days without interest; the other for $6,210.18, payable with 6 per cent interest, in installments of $50.00 per month. The mortgage was acknowledged and duly recorded in Malheur county on September 26, 1939. It provided that until default in two months installments of the note for $6,210.18, and so long as the mortgagors should keep on hand in stock in the business goods, wares and merchandise, including furnitures, fixtures and equipment, exceeding in value by 25 per cent the net indebtedness due or to become due to the mortgagees, the mortgagors should have the right to continue in possession of the mortgaged property, and conduct a retail hardware and appliance store and sell the stock of goods at retail for cash or credit; that if the value of the goods and equipment should at any time fall to a level beneath 25 per cent more than the indebtedness due or to become due, the mortgagors should promptly account to the mortgagees for all sales and apply the proceeds of such sales on the mortgage debt; and that, in the event of default in the payment of principal or interest, the mortgagees might take possession of the mortgaged property and sell the same, and out of the proceeds pay the amount of the indebtedness.

The mortgagors failed to make the payments as promised and became in default, and the mortgagees on June 27, 1940, took possession of the mortgaged property for the purpose of foreclosing their mortgage, and, after due advertisement, sold the same at public auction, and bought in the property in satisfaction of the mortgage debt, taxes on the property, and attorneys' fees. Thereafter, the plaintiff commenced

an action at law to recover the amount of the claims assigned to it and attempted to levy an attachment on the mortgaged property.

The complaint alleges that the mortgage is unlawful and void as to creditors because (a) it permits the mortgagors to retain possession of the mortgaged property and to sell the stock of goods in the usual course of business; (b) does not require the mortgagors to account for the proceeds of such sales unless the value of such goods, fixtures, etc., should fall below 25 per cent in excess of the indebtedness; (c) because it attempts to mortgage after-acquired goods, wares and merchandise. An oral agreement is also alleged, which, however, is not different from the stipulations of the mortgage.

There is no allegation of actual fraud in the transaction. In fact, it is stated in the plaintiffs' brief that the mortgage was given to secure payment of part of the purchase price of the stock of goods.

The plaintiff contends that the mortgage must be held void *ab initio* because the mortgagors were not required to account for the proceeds of the sales of the mortgaged goods unless their value fell below the stipulated amount. For that reason, it is said, the instrument is condemned by § 70-406, O. C. L. A., which reads:

> "All deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods and chattels, or things in action, made in trust for the person making the same, shall be void as against the creditors, existing or subsequent, of such person."

■■ We think that the question is concluded by the decisions of this court in *Kenney v. Hurlburt*, 88 Or. 688, 172 P. 490, 173 P. 158, L. R. A. 1918E 652, Ann.

Cas. 1918E 737, and *First National Bank v. Frazier*, 143 Or. 662, 19 P. (2d) 1091, 22 P. (2d) 325. In the former case it was held that a chattel mortgage upon future acquired personal property or a fluctuating stock of goods is valid as between the mortgagor and mortgagee, and, though such a mortgage executed in good faith is invalid as against the creditors of the mortgagor, the lien of the mortgage is perfected when, as in the instant case, the mortgagee takes possession of the merchandise for the purpose of foreclosing his mortgage.

"The mortgage", it was said, "operated as an executory agreement which subjected the after-acquired goods to the lien of the mortgage upon the mortgagee taking possession of the goods before the rights of third persons intervened. The existence of claims of creditors without attachment or seizure upon execution was not such an intervention." (88 Or. 697).

It is sought to distinguish this case on the ground that the mortgage there contained a provision requiring the mortgagor to account for the sales of the mortgaged goods and apply the proceeds either in payment of the obligation secured or in purchasing new stock to take the place of that sold. We find no difference in substance between that provision and the provision in the mortgage here involved, which requires the mortgagors to maintain the value of the stock at a certain amount and, failing that, account for the proceeds of sales and apply them on the indebtedness. In neither mortgage is there an absolute requirement that the proceeds of sales should be applied on the indebtedness; in both the mortgagors could avoid doing so by maintaining the value of the stock. And, while in the mortgage in the case at bar the mortgagors

are not required to keep and render a strict account of sales unless the value of the stock is reduced below the stipulated minimum, the mortgagees here are given the privilege at any time "to go in and upon said business for the purpose of inventorying the same".

Such a mortgage, it was held in *Kenney v. Hurlburt*, was not given for the benefit of the mortgagors "in any sense of the word". Decisions to the contrary, as the court recognized, may be found in other jurisdictions, but the court, in a carefully considered opinion in which many authorities are cited, announced as the law of this state that a chattel mortgage on a fluctuating stock of goods, given in good faith, without actual fraud, is valid between the parties, and cannot be challenged by creditors who fail to assert their claims by attachment or seizure on execution before the mortgagee has taken possession of the goods. In that case, as here, the mortgage was recorded, and those dealing with the mortgagor had constructive knowledge of its provisions. The court approved "the modern trend of judicial decision to uphold chattel mortgages upon a commercial stock of goods taken in good faith where the instrument is placed upon the public records", and quoted at length from *Etheridge v. Sperry*, 139 U. S. 266, 35 L. Ed. 171, 11 Sup. Ct. Rep. 565, where it is said:

> "The only parties who can claim to be injuriously affected are unsecured creditors. But they are notified by the record of the exact relations between the mortgagor and mortgagee; and surely subsequent creditors have no right to complain if they deal with the mortgagor with full knowledge of such relations." (88 Or. 702)

It is urged that what is said on this subject in *Kenney v. Hurlburt* is dictum. The same contention

was made and rejected in *First National Bank of Burns v. Frazier*, supra. In that case, the court, after stating the substance of the holding in *Kenney v. Hurlburt*, said:

> "It is contended, however, by the appellant here, that this statement by the court was not material to the decision in the case and therefore is not controlling here. This court has re-examined the many authorities cited in the opinion in support of the foregoing statement and is satisfied that the proposition of law therein stated is sound." (143 Or. 688.)

■ These decisions establish the law of this state upon this question, and it is not unlikely that in reliance upon them numerous mortgages have been taken similar to the one now challenged as void. For this reason, though we thought—as we do not—that these precedents are unsound, we should feel bound to adhere to them.

The circuit court ruled correctly in sustaining the demurrer to the complaint, and the decree of dismissal is, therefore, affirmed.