Argued July 5, reversed November 9, 1960

# WOCHNICK *v.* TRUE ET UX
### 356 P. 2d 515

*Frederic P. Roehr,* Portland, argued the cause for appellants. On the brief were Vergeer & Samuels, and Charles S. Crookham, Portland.

Reinhart & Coblens, Portland, filed a brief for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN and HOLMAN, Justices.

HOLMAN, J. (Pro Tempore)

Plaintiff, Iva Wochnick, was the owner of an equity in a hotel at Seaside. The defendants True had previously been the owners of a jewelry business in Portland which had been operated by Mrs. True. The Trues sold the business to one Rothstein and took in return a note for the sum of $18,000, payable in monthly installments and secured by what purported to be a chattel mortgage on the fixtures and stock of goods of the business so sold. The mortgage, which was recorded, provided the mortgagor would maintain the stock of merchandise at a sufficient value at cost to secure the unpaid balance of the loan, thus impliedly giving him the right to sell the stock of goods covered by the purported mortgage. Plaintiff traded defendants the equity in the hotel for the note and purported mortgage on Decem-

ber 23, 1957, at which time the payments on the note were current. The first payment due after the exchange was January 10, 1958. This payment was not made by Rothstein, and he filed a voluntary petition in bankruptcy on January 25, 1958. The note and mortgage provided that Rothstein should have 30 days' grace after the missing of a payment before the note could be declared due and the mortgage foreclosed. The bankruptcy court took possession of the stock of goods and sold it for the benefit of creditors, denying the lien of plaintiff's chattel mortgage.

The negotiations for the exchange were carried on by plaintiff and the defendant Mrs. True, acting for herself and her husband. The ladies appeared to have about the same business experience, both having been engaged in business for an extended period of time.

■ Plaintiff brings this proceeding for rescission of the exchange on two causes of suit, the first on the grounds of misrepresentation and the second on mutual mistake. The trial court granted rescission on grounds stated in its decree to be as follows:

> "* * * defendants represented to plaintiff
> " 'That said contract was secured by a valid chatel [sic] mortgage upon fixtures and merchandise located at 749 S.W. Broadway, City of Portland * * *'
> "The evidence establishes that the chattel mortgage was not in fact valid so far as the merchandise it purported to cover is concerned."①

There is no doubt that the representation was made as set forth in the court's decree, as it is

---

① While the complaint stated the instrument secured by the mortgage was a contract and was so referred to in most of the testimony, it actually was a note.

admitted by the defendants in their pleadings. If the decree of the trial court is to be sustained, a review of the evidence indicates it must be on the basis of this representation. This view was apparently shared by the trial court, as it is the only stated basis for its decree.

Defendants first claim that plaintiff caused her own difficulty by not taking proper steps to protect her rights by taking the property into possession when Rothstein failed to make his payment on the 10th of January. This position is not well taken, as under the terms of the note and mortgage plaintiff could not assert her rights, whatever they might have been, until Rothstein was in default for a period of 30 days, and by this time he was in bankruptcy.

Defendants next claim the representation that the note was secured by a valid mortgage on the stock of goods was true. This requires an examination of the law relative to the legal significance of what purports to be a chattel mortgage on a revolving stock of goods. This was discussed by this court in the cases of *Kenney v. Hurlburt,* 88 Or 688, 172 P2d 490, 173 P 158; *First Nat. Bank of Burns v. Frazier,* 143 Or 662, 19 P2d 1091, 22 P2d 325; and *Turner v. Dobson,* 169 Or 362, 127 P2d 746. These decisions are referred to in an Oregon Law Review note in Volume 28, at page 376.

While the state of the law in this jurisdiction may not be entirely clear in all factual circumstances that may arise under such a situation, at least it can be said that in Oregon what purports to be a chattel mortgage on a fluctuating stock of goods is not void, in that it does bestow upon the mortgagee some rights. Without attempting to define exactly what these rights may be, they would appear to amount to

at least an equitable pledge giving the mortgagee the right upon default to take possession of the goods and thus secure a position as to the goods which under some circumstances is superior to the rights of general creditors who have not, prior to possession by the mortgagee, impressed the goods with a lien of their own. In the case of *Turner v. Dobson,* supra, at p 366, Mr. Justice LUSK, referring to *Kenney v. Hurlburt,* supra, states as follows:

"* * * In the former case it was held that a chattel mortgage upon future acquired personal property or a fluctuating stock of goods is valid as between the mortgagor and mortgagee, and, though such a mortgage executed in good faith is invalid as against the creditors of the mortgagor, the lien of the mortgage is perfected when, as in the instant case, the mortgagee takes possession of the merchandise for the purpose of foreclosing his mortgage.

" ' "The mortgage", it was said, "operated as an executory agreement which subjected the after-acquired goods to the lien of the mortgage upon the mortgagee taking possession of the goods before the rights of third persons intervened. The existence of claims of creditors without attachment or seizure upon execution was not such an intervention." ' "

He further stated upon page 367:

"* * * Decisions to the contrary, as the court recognized, may be found in other jurisdictions, but the court, in a carefully considered opinion in which many authorities are cited, announced as the law of this state that a chattel mortgage on a fluctuating stock of goods, given in good faith, without actual fraud, is valid between the parties, and cannot be challenged by creditors who fail to assert their claims by attachment or seizure on execution before the mortgagee has taken possession of the goods. In that case, as here, the mort-

gage was recorded, and those dealing with the mortgagor had constructive knowledge of its provisions. The court approved 'the modern trend of judicial decision to uphold chattel mortgages upon a commercial stock of goods taken in good faith where the instrument is placed upon the public records' * * *."

Such a document does bestow upon the person holding it some legal right as to the goods that would not be had otherwise; i.e., the right to possession upon default in the payment of the indebtedness. As such it is a form of security for the debt and is of some validity. It is in the form of a mortgage and is generally termed in business parlance a chattel mortgage on a fluctuating or revolving stock of goods.

Plaintiff testified that defendants represented to her that the mortgage would "fully secure" the unpaid balance of the note. This is a different representation from any set forth in plaintiff's first cause of suit. This will avail plaintiff nothing, as the proof cannot place her in a position stronger or better than that asserted in the complaint.

On the other hand, if we assume that the representation that the note was secured by a valid mortgage was, in fact, an untruth, the defendants' claim this was merely the statement of a legal opinion upon which the plaintiff was not entitled to rely. Restatement of the Law of Torts 102, § 545, states as follows:

> "(1) If a representation as to a matter of law in a business transaction is a representation of fact the recipient is justified in relying upon it to the same extent as though it were a representation of any other fact.
> "(2) If the representation as to a matter of law in a business transaction is a representation

of opinion as to the legal consequences of facts known to the maker and the recipient or assumed by both to exist, the recipient is justified in relying upon it to the same extent as though it were a representation of any other opinion as stated in §§ 542, 543."

Section 542 of the Restatement states as follows:

"The recipient in a business transaction of a fraudulent misrepresentation of the maker's opinion upon facts known to the recipient is not justified in relying thereon in a transaction with the maker unless the opinion is material and the maker

"(a) holds himself out as having special knowledge of the matter which the recipient does not have, or

"(b) stands in a fiduciary or other similar relation of trust and confidence to the recipient, or

"(c) has successfully endeavored to secure the confidence of the recipient, or

"(d) knows that the recipient will rely on his opinion."

■ While the Restatement refers to "fraudulent" misrepresentations, the issue of fraud is not necessary in a suit for rescission. *Sharkey v. Burlingame Co.*, 131 Or 185, 282 P 546. However, these sections of the Restatement would be equally applicable to the question of the recipient's right to rely thereon, whether the statements were knowingly false or not.

■ As a result of these sections it would appear to be particularly relevant to determine whether the representation made in this case was one of opinion or one of fact. Under the rules set forth in the Restatement, if it was one of fact the plaintiff would be entitled to rely thereon, while if it was one of

opinion she would not, as none of the requisites as set out under subsections (a), (b), (c) or (d) of § 542 are present in this case. Comment (a) under § 545 of the Restatement in discussing this matter states as follows:

"A statement of law may be a statement of fact or a statement of opinion (see Comment c on § 525). Thus, a statement that a particular statute has been enacted or repealed or that a particular decision has been rendered by a court upon a particular state of facts is a statement of fact. On the other hand, if all the pertinent facts are known and there is no misrepresentation of the existence or nonexistence of a pertinent statute or judicial decision, the statement of the legal consequences of such facts is a statement of opinion as to what a court would determine to be the legal consequences of such facts if the matter were litigated. However, in order that a misstatement of law may be regarded as a mere matter of opinion all the pertinent facts upon which it is based must be known to both parties."

Comment (d) under the same section further states:

"Where the misrepresentation of law consists of a statement that a particular legal consequence follows from facts which are known by the recipient as well as by the maker, the statement is one of opinion, and whether the recipient is justified in relying upon it is determined by the rules which determine his justifiable reliance upon any other opinion."

Plaintiff, in effect, is contending the legal rights bestowed upon her by the documents for which she traded were other than as represented. These documents were available to her so that she had an opportunity to determine their legal consequences; i.e., were they valid and to what extent did they secure

her? Therefore, the representation, if made, was a representation of opinion as to the legal effect of the documents in question, and she was not entitled to rely thereon.

Similar situations have heretofore come before this court. In the case of *Wicks v. Metcalf*, 83 Or 687, 163 P 434, 163 P 988, the court stated as follows:

> "* * * The substance of the allegation is that the defendants represented to her that it would be necessary for her to sign the notes as well as the mortgage in order to make good the security; that such representations were false and made for the purpose of deceiving her; and that she relied upon them and signed the notes. In other words, she inferred from what defendants told her that the act of signing the notes would not as a matter of law make her personally liable for her promise to pay. The authorities are practically uniform in their conclusion that such representations, even though false, do not afford any ground for relief."

In the case of *McFarland v. Hueners*, 96 Or 579, 190 P 584, defendants in an action brought against them on a note defended upon the grounds that they were induced to sign it by a representation that they would be under no greater obligation for the purchase price of the land than was required in an original agreement between the parties. The court in considering this defense stated as follows:

> "The matter set up in the original answer did not amount to a defense. The claim that plaintiff and Lyon had induced the defendant to make the change in the contract by representation, that his liabilities and obligations would be no greater on the notes and mortgages then executed by him than they would have been under the original arrangement, was at most a misrepresentation as to the law governing the transaction."

In the case of *Ball v. Associated Oil Co.*, 151 Or 383, 50 P2d 125, the court had before it the contention that the signature to a modification agreement was procured by representations that the party so signing it would receive 8 cents per gallon margin on the sale of gasoline instead of 7 cents per gallon received under the original agreement The court in response to that contention said as follows:

> "In our opinion there are two reasons why the charge of fraud against the defendant oil company can not be sustained as a matter of law: (1) The. alleged representation that, under the modification agreement, plaintiffs would receive an aggregate differential of 8 cents per gallon, instead of 7 cents per gallon as provided in the original lease and license agreements, concerns only the legal effect of the modification agreement; * * *.
>
> "* * * It is admitted that the modification letter or agreement in question was read by plaintiffs before they affixed their signatures thereto. Hence plaintiffs had no right to rely upon any representation of the defendant as to the legal effect of the instrument they signed."

In the case of *Sorenson et ux v. Gardner et ux*, 215 Or 255, 334 P2d 471, the court, speaking through Mr. Justice LUSK, held that it was a misrepresentation of fact where it was represented that a house was constructed in compliance with minimum requirements of state law and the person to whom such representations were made did not know the manner in which the house was constructed The court there stated as follows:

> "* * * Under the rule as formulated by the Restatement, had the plaintiffs been aware of these facts and had the defendants represented to them that the facts as so known constituted a

compliance with the law, then the misrepresetation in question would have been one of law and not of fact." (p 261)

The court in discussing the general subject stated as follows:

"With respect to the other charges in the complaint, it is a general rule that fraud can not be predicated upon misrepresentations of law or misrepresentations as to matters of law. 23 Am Jur 809, Fraud and Deceit § 45. Thus, misrepresentations concerning the legal effect of an instrument have been held to be not actionable. [Citing authorities.] The reason usually given for the rule is that every one is presumed to know the law, and therefore misrepresentations as to the legal effect of a particular instrument and the like are regarded as mere expressions of opinion; [Citing authorities] though, as Dean Prosser says: '* * * two reasons have been repeated, sometimes in the same decision: first, that every man is presumed to know the law, and hence the plaintiff cannot be heard to say that he reasonably believed the statement made to him; and second, that no man, at least without special training, can be expected to know the law, and so the plaintiff must have understood that the defendant was giving him nothing more than an opinion.' Prosser, Torts (2d ed) 559-560, § 90. The basis of the rule has been criticized by courts and textwriters." (p 259)

The court then sets out § 545 of the Restatement of the Law of Torts and quotes from the comment on § (1) as follows:

"* * * In the comment on Subsection (1) of the foregoing, it is said, 'If a representation concerns the legal effect of facts not disclosed or not otherwise known to the recipient, it may justifiably be interpreted as implying that there are facts which substantiate the statement * * *. So,

too, the assertion of title to a particular tract of land asserts the existence of those conveyances or relationships which are necessary to vest the title in the alleged owner. On the other hand, if all the facts believed by the maker to exist are stated to the recipient or otherwise known by him and from these facts the maker of the representation asserts that title vests in the person in question as a legal consequence, the representation is an expression of opinion and the case falls within Subsection (2).' "

The contents of the documents which plaintiff received by assignment were necessarily known to her, and, therefore, defendants' expression as to their legal consequences was one of opinion upon which plaintiff was not entitled to rely. Such an expression could not, therefore, be the basis for a rescission on the ground of misrepresentation as found by the trial court.

The plaintiff asserts a second cause of suit as follows:

"That at the time of the transaction * * * plaintiff and defendants believed that the Chattel Mortgage transferred to the plaintiff herein * * * amply created a lien upon said stock and fixtures as against all such persons which could be enforced by the plaintiff herein."

The plaintiff testified as follows:

"* * * Mrs. True told me that the mortgage was on the fixtures and merchandise which fully secured payment of the balance of the mortgage, * * *."

In other words, plaintiff is also claiming that the parties were mutually mistaken.

The above testimony of plaintiff is the only evidence upon which the allegations of the second cause of suit can be sustained. In our opinion, when taken in con-

junction with the balance of the testimony, this is not sufficiently convincing to upset a business transaction entered into by two business women dealing at arms' length who both had available to them all the documents in question. Mutual mistake was not the basis upon which the trial court rested its opinion decreeing rescission.

For the reasons given, the decree of the trial court will be reversed and a decree entered in favor of defendants dismissing plaintiff's complaint.