Frank A. DUDLEY, as Trustee of the Estate of DuVall's Inc., Bankrupt, Plaintiff,

v.

Edwin C. EBERLY and Elsie Eberly, husband and wife, Defendants.

Civ. No. 61–25.

United States District Court
D. Oregon.
Jan. 3, 1962.

F. Brock Miller, Boyrie & Miller, Portland, Or., for plaintiff.

S. J. Bischoff, Portland, Or., Pat H. Donegan, Burns, Or., for defendant.

KILKENNY, District Judge.

Plaintiff asks that the Court declare a certain transaction between the Bankrupt and defendants to be a preferential transfer voidable under 11 U.S.C.A. § 96 (Section 60 of the Bankruptcy Act).

On and prior to October 9, 1957, defendants operated a variety store at Burns, Oregon, and on said date sold and transferred the assets of said store, including a floating stock of merchandise, to the Bankrupt, then known as Eberly's, Inc. On said date Bankrupt paid to defendants a substantial sum on the purchase price and executed and delivered to defendants a chattel mortgage on the store fixtures and said merchandise to secure the payment of the balance of the purchase price. The mortgage was duly recorded on said date. Subsequent to said sale and the execution and delivery of said chattel mortgage, the Bankrupt operated said business and sold merchandise at retail in the ordinary course of business and purchased merchandise in said business to replace the stock of merchandise previously sold. All of the stock of goods on hand at the time the defendants took possession as hereinafter mentioned was merchandise which was acquired after the execution and delivery of the chattel mortgage.

In January, 1960, at the request of the mortgagor, the monthly installments payable on said mortgage were substantially reduced, the last installment being paid on November 9, 1960, leaving a balance of $20,105.05 with interest at 6% until paid. At that time the Bankrupt was in default in the payment of one installment due under the mortgage, in failing to obtain a fire insurance policy and to pay personal property taxes for the fiscal year 1959 and the fiscal year 1960, all as required by the mortgage. A few days prior to November 15, 1960, the Bankrupt entered into negotiations for the sale of the stock of goods and fixtures to Sprouse-Reitz Co. The representative of that company proceeded to take inventory to determine the value of the property and the keys to the store were delivered to Sprouse-Reitz for that pur-

pose. On November 15, 1960, defendants secured the keys from the representative of Sprouse-Reitz and proceeded to take possession of the goods and fixtures pursuant to the terms and conditions of the chattel mortgage. The parties agree that the merchandise which came into the possession of defendants at that time had a reasonable market value of $17,500. They also agree that the bankrupt corporation was insolvent at the time defendants took possession of such goods. Defendants claim they had no notice of such insolvency or reasonable cause to believe that such insolvency existed.

The transaction with Sprouse-Reitz Co. was never consummated and the record is clear that Sprouse-Reitz Co., while taking inventory, was acting for itself and for the Bankrupt and that defendants actually took possession of the goods from the Bankrupt on November 15, 1960. It is not material whether possession was taken for the purpose of immediate foreclosure. The record discloses that defendants proceeded to foreclose the chattel mortgage and sell the property on December 2, 1960.

Although both plaintiff and defendants made many contentions in the pretrial order, the basic questions to be answered by the court are two in number:

(1) Did the action of defendants in taking possession of the floating stock of merchandise on November 15, 1960 constitute a preferential transfer which would be voidable under the provisions of 11 U.S.C.A. § 96, sub. a?

(2) If such action did create a preference, did defendants have reasonable cause to believe that the debtor was insolvent at the time defendants took possession under the provisions of 11 U.S.C.A. § 96, sub. b?

I. To create a preference the statute requires:

(a) a transfer of property from the Bankrupt to the creditor. In this case the evidence clearly shows such transfer.

(b) that such transfer be on account of an antecedent debt. Here there is no question raised on that requirement.

(c) that the Bankrupt was insolvent at the time. Here that is admitted.

(d) that the transfer be made within four months prior to the filing of the petition of bankruptcy, and

(e) that the transfer will enable the creditor to obtain a greater percentage of his debt than some other creditor of the same class.

■ The parties have agreed that if defendants did not have a valid legal lien prior to taking possession, then defendants would obtain a greater percentage of their indebtedness than other secured creditors. Therefore, the question to be decided by the court is whether the transaction constituted a voidable transfer within four months prior to the filing of the petition.

■ The parties agree that the law of the state of Oregon is the proper measure to be used in determining the status of a chattel mortgage on a floating stock of merchandise. Commencing with Kenney v. Hurlburt, 88 Or. 688, 172 P. 490, 173 P. 158, the Oregon court has uniformly held that a chattel mortgage on a fluctuating stock of goods is valid as between the mortgagee and the mortgagor and as to creditors of the mortgagor, such mortgage amounting to an equitable pledge giving the mortgagee the right, upon default, to take possession of the goods and thus secure a position as to the goods which, under some circumstances, is superior to the rights of the general creditors who have not, prior to possession by the mortgagee, impressed the goods with a lien of their own. Turner v. Dobson, 169 Or. 362, 366, 127 P.2d 746; Wochnick v. True, 224 Or. 470, 473, 474, 356 P.2d 515. Under Oregon law the legal lien is not perfected until the mortgagee takes possession. Likewise, it is clear that the Oregon courts would recognize the lien of an attaching creditor who obtained such prior to the time the mortgagee took or attempted to take possession. The precise

point was decided adversely to the position taken by defendants in the order and opinion of Judge East in Kenneth L. Davis, Bankrupt, on October 12, 1961, D.C., 201 F.Supp. 715, from which I quote:

> " * * * and the recent case of Wochnick v. True, 224 Or. 470 [473, 474], 356 P.2d 515 (1960) * * * indicates that if faced with the exact question, the Oregon Supreme Court would allow a creditor who has attached or exercised legal or equitable proceedings to prevail over a fluctuating stock of goods mortgagee who had not taken possession prior to the creditor's activity. Inasmuch as this is the position of the trustee herein under Oregon law, this Court accepts Wochnick v. True, supra, as a guide post. * * * "

Not only is this court committed to the position of the plaintiff, but it seems to me that this position is inherently sound. The fact that the mortgagee in the Davis case may have taken possession after the adjudication in bankruptcy is of no significance. The transfer is deemed to have been made "immediately before the filing of the petition" or "contemporaneously with bankruptcy." In re Cox, 7 Cir., 1943, 132 F.2d 881. It would be of little, if any, benefit to the profession for this court to now reexamine the subject and analyze each case cited by plaintiff and defendants. In passing I should add that Judge East had the benefit of elaborate briefs prepared and filed by the same attorney as here represents the defendants. Although a substantial portion of each brief is devoted to the effect of recording the chattel mortgage, I am of the opinion that the recording, as such, has nothing whatsoever to do with the problem presented.

What constitutes the perfection of a transfer is a matter of state law. Collier on Bankruptcy, 14th Ed., Vol. 3, § 60.39. However, the question of whether the transfer is preferential is a question of federal law. Collier on Bankruptcy, 14th Ed., Vol. 3, supra. In re Zero Refrigerator Lines, Inc., D.C.Mo. 1939, 27 F.Supp. 662. Under Oregon law a purchaser in good faith and for a valuable consideration will prevail over an equitable lien claimant. Lytle v. Hulen, 128 Or. 483, 275 P. 45. Here, the mortgagee had nothing more than a contract right to perfect his lien by taking possession.

Transfer, as defined by the Bankruptcy Act, 11 U.S.C.A. § 1(30),[1] includes, among other things, "fixing a lien upon property or upon an interest therein, * * *." The definition is certainly broad enough to cover the creation of a legal lien from an equitable lien. In any event, the lien was not "perfected" within the meaning of Section 60, sub. a of the Act until the time defendants took possession on November 15, 1960, which would be within the four-month period. Collier on Bankruptcy, 14th Ed., Vol. 3, pp. 916–917.

II. Plaintiff contends that even though defendants had no actual knowledge of the Bankrupt's insolvency, they had reasonable cause to believe that the Bankrupt was insolvent at the time they seized possession of the goods. It is not necessary that the preferred creditor have actual knowledge that the transfer would result in a preference nor that he have a belief, one way or the other, on that subject. All that is necessary is that he have reasonable cause to believe that a preference would be created. Collier on Bankruptcy, 14th Ed., Vol. 3, § 60.53, p. 969; McDougal v. Central Union Con-

---

1. 11 U.S.C.A. § 1(30).

"* * * (30) 'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security or otherwise; the retention of a security title to property delivered to a debtor shall be deemed a transfer suffered by such debtor; * * *."

ference Association, etc., 10 Cir., 1940, 110 F.2d 939. It is sufficient if a state of facts has been brought to the attention of the creditor concerning the affairs and financial condition of the debtor which would lead a prudent businessman to conclude that the debtor was insolvent and a creditor is charged with knowledge which reasonable diligent inquiry would disclose. C. A. Swanson & Sons Poultry Co. v. Wylie, 9 Cir., 1956, 237 F.2d 16.

■ Keeping these rules in mind, let us examine the record. Although defendants [2] were aware of the fact that a transaction was pending for the sale of the merchandise to Sprouse-Reitz and although interested in knowing whether the sales price would cover the indebtedness to defendants and all other indebtedness, no inquiry was made as to the total amount of other indebtedness. No inquiry was made by defendants as to how they would be paid by Sprouse-Reitz from the sales price of the property and defendants avoided a clear cut answer to a question on whether they had a fear of not being paid off from the sales price of the property. If Eberly had inquired concerning the other indebtedness, he probably would have learned that the Bankrupt's indebtedness was in excess of the reasonable value of its assets. The avoidance of obvious and reliable sources of information will charge the creditor with the knowledge he could have obtained from them. Pittsburgh Plate Glass Co. v. Edwards, 8 Cir., 1906, 148 F. 377, 378. Under such circumstances, it will not help the creditor to avoid learning the true financial status. Pittsburgh Plate Glass Co. v. Edwards, supra. Defendants were advised by Sprouse-Reitz that the inventory was not measuring up to the representations of the Bankrupt. The defendants were fully advised as to the terms of the proposed Sprouse-Reitz sale. Defendants were advised that the Bankrupt owed a rather large debt to one Jordan. The Bulk Sales Act was explained to defendants by a representative of Sprouse-Reitz and that to protect itself Sprouse-Reitz would have to notify creditors. Bankrupt was in default in its payments to defendants, in providing proper fire insurance and in the payment of taxes. DuVall was absent during the taking of the inventory. After defendants knew of the proposed sale, the large indebtedness to Jordan and that the inventory was not measuring up to expectations, they went to their attorney for advice. At the time they consulted their attorney, defendants were in no better position than the general creditor Jordan. No doubt, the attorney recognized that Jordan might attach and create a lien superior to defendants' equitable lien. Sound thinking required the attorney to advise defendants to take possession and in that manner perfect their mortgage lien. Of course, the knowledge of defendants' attorney would be imputed to them. Rogers v. Palmer, 102 U.S. 263; Farmers State Bank v. Freeman, 249 F. 579. If defendants did not doubt the solvency of the Bankrupt, it is difficult to understand their action in seizing possession of the entire store and its contents. The defendants had knowledge that Bankrupt was unable to meet its obligations in the usual course of business, that is, the failure to pay the installments due and the payment of taxes against the business. That in itself is a badge of insolvency. I hold that notice of all of the above facts would incite a man of ordinary prudence to an inquiry which would necessarily have disclosed the insolvency of the Bankrupt.

The elaborate briefs of counsel for defendants have received my careful consideration. However, I must find that there is substantial evidence in support of plaintiff's contention that defendants had reasonable cause to believe that Bankrupt was insolvent at the time they took possession of the goods and attempted to perfect their mortgage lien.

This opinion and the agreed facts in the pretrial order shall stand as my findings of fact and conclusions of law. Counsel for plaintiff shall prepare an appropriate judgment. No interest will be allowed.

2. Edwin Eberly.